[Civ. No. 218. Fourth Appellate District.—June 17, 1930.]

HARRY B. GREEN, Respondent, v. MARGARET E. STEWART, Appellant.

Arthur F. H. Wright for Appellant.

R. A. McKay and Allan Brant for Respondent.

MARKS, Acting P. J.—Respondent filed his action in the court below to recover damages against appellant and Sidney Cole, Roger E. Jones and Roswell C. Jones, for malicious prosecution. A judgment of nonsuit was entered in favor of all defendants except Margaret E. Stewart. The case against her was submitted to the jury, which returned a verdict in the sum of $350 for attorney's fees expended by respondent in defending the criminal proceedings instituted against him, $3,750 for other actual damages and $500 exemplary damages. Upon motion for new trial the actual damages were reduced by the court in the sum of $1250, which reduction was accepted by respondent.

Both appellant and respondent were engaged in the business of buying and selling real estate in the city of San Diego. Sidney Cole, Roger E. Jones, Roswell C. Jones and H. E. Christian were buyers and subdividers of real property and up to on or about June 17, 1926, were copartners conducting their business under the fictitious name of the Seaboard Realty Company. In June, 1926, the copartners organized a corporation called the J. C. C. Company and operated under this corporate name from on or about the seventeenth day of June, 1926. The partners were the officers, directors and stockholders of the corporation.

Anna B. Bunce was the owner of Pueblo lot No. 1213, in the city of San Diego, county of San Diego, state of California. Early in April, 1926, appellant negotiated with Anna B. Bunce for the purchase of this property and en-

tered into an escrow agreement with her to consummate the sale. Five hundred ($500) dollars in cash was paid on account of the purchase price. Appellant gave an option to purchase the property to respondent, who, in turn, gave H. E. Christian an option to purchase for the named price of twenty thousand ($20,000) dollars. This last instrument was dated April 13, 1926. The option from Stewart to Green was dated April 15, 1926. Each option acknowledged the receipt of five hundred ($500) dollars. This money was obtained from the funds of the Seaboard Realty Company. Christian gave Green his check for this amount dated April 16, 1926, the check bearing the successive indorsements of Green and Stewart. It was presumably paid to Bunce on account of the purchase price of the property. The option from Stewart to Green resulted in two separate escrow instructions to the Union Title Insurance Company of San Diego. The time for completing the sale to Green was finally fixed as June 18, 1926, "and for such time thereafter as shall be necessary for a full compliance herewith, unless after such period I shall have notified you in writing that I have revoked the same. Signature Margaret E. Stewart." The original option from Stewart to Green was extended to June 5, 1926, and it appears that on or before this date Green was to pay her an additional $4,500. We have not been able to find the original option in the record. The first escrow instruction signed by Green and approved in writing by Margaret E. Stewart contains the following:

"San Diego, Cal. June 1, 1926. $5,000. 6-14-26 I will hand you herewith $5,000 and will hand you a trust deed and notes totaling $1,600 as described below 6-14-26."

The second instruction signed by Margaret E. Stewart alone contains the following:

"San Diego, Cal. 6-14-26. . . . I will hand you a deed executed by Margaret E. Stewart to H. B. Green of Pueblo Lot #1213 which you are authorized to record or deliver to grantee upon payment to you of the sum of $5,000."

This particular instruction contained the reference to June 18, 1926, before quoted. Both of these instructions undoubtedly form parts of the writings which set forth the terms of the agreement of the sale from Stewart to Green.

The time to exercise the option of purchase given Christian by Green was extended to June 20, 1926. This option was secured by Christian for the benefit of the copartners doing business under the name of the Seaboard Realty Company. Under date of June 17, 1926, this option was assigned by the partners to the J. C. C. Company. The J. C. C. Company completed the purchase of this property from Margaret E. Stewart shortly after the twenty-second day of June, 1926. Under date of June 18, 1926, Margaret E. Stewart and Sidney Cole executed a contract of purchase and sale of the property at the expressed price of $15,500. In this contract Cole was acting for the J. C. C. Company. Appellant testified that the actual selling price to this company was $16,000. She had already received $500 from the funds of the Seaboard Realty Company by the check from Christian to Green, which was indorsed and given her.

Considerable litigation arose out of these transactions. Perhaps the principal cause for this is found in the fact that as the transaction was originally planned Bunce sold the land to Stewart for about $60 per acre. Stewart agreed to sell to Green for about $70 per acre. Green agreed to sell to Christian for the named sum of $125 per acre, but Christian was only going to pay Green $100 per acre, proposing to make a secret profit from his partners of $25 per acre. This was discovered and appellant sold to the J. C. C. Company direct for $100 per acre, the company saving about $4,000 and Stewart making about $4,000 more than she would have made had she sold to Green. Green was left out of the transaction and received nothing.

On July 2, 1926, respondent filed in the Superior Court of the County of San Diego a verified complaint in which he named Margaret E. Stewart and Anna C. Bunce as defendants, alleging breach of contract to convey Pueblo lot No. 1213 to him, and seeking recovery of money alleged to have been paid to Margaret E. Stewart, together with damages. He filed a *lis pendens* in the office of the county recorder of San Diego County clouding the title to the real property. This action was tried on November 3, 1926, and judgment was rendered in favor of the defendants named in the complaint. It was signed and filed on December 3, 1926.

The partners operating under the name of Seaboard Realty Company commenced selling lots in Pueblo Lot No. 1213, immediately upon Christian securing the option of purchase from Green. The J. C. C. Company continued selling these lots when it succeeded to the rights of the Seaboard Realty Company. The corporation found that it could not convey a clear record title to the purchasers of these lots because of the *lis pendens* filed by Green. It filed an action against Green in the Superior Court of San Diego County to quiet its title to Pueblo Lot No. 1213. The case was tried on November 4, 1926, and on December 2, 1926, judgment was signed and filed in favor of the corporation.

On October 14, 1926, appellant swore to a complaint charging respondent with perjury alleged to have been committed in connection with his verification of the complaint filed by him against Stewart and Bunce on July 2, 1926. The criminal complaint was filed in the Justice's Court of San Diego Township, County of San Diego, State of California. A warrant of arrest was issued and respondent was placed under arrest on October 15, 1926, and confined in the felons' tank of the county jail of San Diego County where he remained for about four and one-half hours, when he was released upon giving bail in the sum of $2,000. On a preliminary examination held on November 10, 1926, the case was dismissed and appellant was released and his bond exonerated. The parts of the criminal complaint material to this appeal are as follows:

"That said Harry B. Green on or about the 2nd day of July, 1926, in the said County of San Diego, State of California, and before the making or filing of this complaint, then and there came before M. D. Frye, a Notary Public in and for the County of San Diego, State of California, and thereupon, before said M. D. Frye, who was at the time aforesaid a Notary Public of said County of San Diego, State of California, as aforesaid, and who then and there had authority of law and was competent to administer oaths, he, the said Harry B. Green, after being duly sworn, then and there deposed and said that he was the plaintiff named in the complaint entitled 'In the Superior Court of the State of California in and for San Diego County,' No. 48749. Dept. No. ——, *Harry P. Green, Plaintiff,* v. *Margaret E. Stewart and Anna C. Bunce,* formerly Anna C. Christian,

defendants,' and that he had read the said complaint and knew the contents thereof and that the same was true of his own knowledge except as to matters therein stated to be upon information and belief, and as to those matters he believes them to be true. That the said complaint alleged in part as follows:

"That the said plaintiff, above named, purchased from the said defendant, Margaret E. Stewart, on April 15th, 1926, Pueblo Lot No. 1213 of the Pueblo Lands of the city of San Diego, San Diego County, State of California, as per recorded Plat thereof on file in the office of the County Recorder of said San Diego County, embracing 160 acres of land, for the sum of Eleven Thousand Seven Hundred ($11,000.00) Dollars, payable as follows: Five Hundred ($500.00) Dollars, cash, which was paid on said date, Forty-five Hundred ($4500.00) Dollars, which was paid on June 3rd, 1926, and the balance of said purchase price to be paid in instalments of Fifteen Hundred ($1500.00) Dollars on July 1st and Fifteen Hundred ($1500.00) Dollars on October 1st, 1926; Fifteen Hundred ($1500.00) Dollars on January 1st, Twelve Hundred ($1200.00) Dollars on April 1st, and the balance thereof of One Thousand ($1,000.00) Dollars of aforesaid total consideration on July 1st, 1927. Said defendant, Margaret E. Stewart, thereby agreeing to convey to said plaintiff, or to whom he might designate, a valid merchantable title of said premises, free and clear of incumbrances, and upon said April 15th, 1926, delivered to plaintiff herein her written receipt in acknowledgment of the payment of the first instalment of Five Hundred ($500.00) Dollars upon said consideration of said purchase price for said land.'

"That the allegation in the words and figures following, to-wit: 'Forty-five Hundred ($4500.00) Dollars, which was paid on June 3rd, 1926,' which allegation was then and there material to said action, was in truth and in fact, as he, the said Harry B. Green, then and there well knew, wholly false. . . . That the said complaint alleged in part as follows: 'That thereafter, defendant, Margaret E. Stewart, extended, in writing, the time for making payment of the remaining partial payment of said consideration, amounting to the sum of Forty-five Hundred ($4500.00) Dollars, to and including June 5th, 1926,' and said sum of Forty-five

Hundred ($4500.00) Dollars was paid in accordance there-with on June 3rd, 1926, and said transaction was placed in Escrow with the Union Title Company of San Diego, State of ·California, in accordance with the aforesaid agreement.'

"That the allegation in the words and figures following, to-wit: 'and said sum ·of Forty-five Hundred ($4500.00) Dollars was paid in accordance therewith on June 3rd, 1926,' which allegation was then and there material to said action, was in truth and in fact, as he, the said Harry B. Green, then and there well knew, wholly false. . . . That the .said complaint alleged in part as follows: 'That by reason of the conduct and actions of the defendant, Margaret E. Stewart, in the premises, as aforesaid, plaintiff has suffered damage in the sum of Five Thousand ($5,000.00) Dollars, already advanced and paid defendant, Margaret E. Stewart, on the consideration price of Eleven Thousand Seven Hundred ($11,700.00) Dollars, and in accordance with the aforesaid agreement and, without the specific performance of said agreement upon the part of defendant, Margaret E. Stewart, plaintiff has been and will be further damaged in the additional sum of Ten Thousand ($10,000.00) Dollars, as a result of the losses sustained by plaintiff by virtue of Defendants' Margaret E. Stewart, failure and refusal to perform and carry out the terms of the purchase and sale of said premises, in accordance with the aforesaid agreement with plaintiff.'

"That the allegation in the words and figures following, to-wit, 'plaintiff has suffered damage in the sum of Five Thousand ($5,000.00) Dollars, already advanced and paid defendant Margaret E. Stewart,' which allegation was then and there material to said action, was in truth and in fact, as he, Harry B. Green, then and there well knew, wholly false."

Appellant presents numerous assignments of error upon which she relies for a reversal of the judgment against her. They may be grouped under four general classifications as follows: First, that respondent failed to prove either malice on the part of appellant or want of probable cause in instituting the criminal charges against him; second, that the evidence does not support the verdict; third, that the verdict and judgment were so excessive as to indicate passion

and prejudice against her; fourth, errors of law occurring during the trial in the court's sustaining and overruling various objections to questions propounded to witnesses. An added specification of error occurs in the bill of exceptions concerning certain instructions given by the court to the jury. However, this seems to have been abandoned as no mention is made of any erroneous instruction in any of the briefs before us. We have examined all the instructions given and find them fair, full and complete. As we find no error in them we will not consider them further.

The burden of proving malice and want of probable cause in an action for malicious prosecution rests upon the plaintiff. Like any other fact in issue, malice may be proved by direct evidence, or it may be inferred from all the circumstances of the case. While malice is not presumed as a result of the want of probable cause, the lack of probable cause is a circumstance from which a jury may infer malice. (*Burke* v. *Watts,* 188 Cal. 118 [204 Pac. 578]; *McKenna* v. *Heinlen,* 128 Cal. 97 [60 Pac. 668]; *Vesper* v. *Crane Co.,* 165 Cal. 36 [L. R. A. 1915A, 541, 130 Pac. 876].) In this case there was no direct evidence of malice on the part of appellant. Malice, if any, must be inferred from a lack of probable cause and from the other circumstances of the various transactions of the parties surrounding the filing of the criminal complaint against respondent. We must, therefore, first determine whether or not there was sufficient evidence in the court below to support the conclusion that there was no probable cause for filing the criminal complaint against respondent. It must be admitted that the question presented here is a close one.

The existence of probable cause, or its lack, is always a question of fact in cases of this kind, and if there is any material and competent evidence in the record to support the conclusions reached in the trial court on a question of fact, the appellate court is bound by such conclusions and cannot set them aside.

What is, or is not, probable cause is measured and determined by the usual and common standard of human judgment and conduct (*Griswold* v. *Griswold,* 143 Cal. 617 [77 Pac. 672]). The true test is whether or not a reasonable man, possessing all of the information within the knowledge of the prosecutrix, would be justified in enter-

taining the suspicion that the charge is true. This measure of the knowledge of the prosecutrix must be applied as of the time that the prosecution was instituted which, in the case before us was on October 14, 1926. (*McKenna* v. *Heinlen, supra; Ball* v. *Rawles*, 93 Cal. 222 [27 Am. St. Rep. 174, 28 Pac. 937, 940].) To this rule must be added the further requirement that the prosecutrix did at the time she verified the criminal complaint actually believe that the crime charged had been actually committed by the accused. As was said in the case of *Ball* v. *Rawles, supra:*

"As a principle of law, this instruction was erroneous in omitting to include therein the further element that the defendant did in fact believe that a crime had been committed by the plaintiff. The circumstances in themselves might be such as ordinarily to create such belief in the mind of a person, yet the defendant might not have that belief, for the reason that he had knowledge of other facts or circumstances which would destroy such belief. While it is not necessary to show that the crime has in fact been committed, it is necessary to show, not only that the defendant had reasonable ground to believe, but that he did in fact believe, that the crime had been committed, and that the plaintiff had committed the crime."

With these rules of law in mind we must determine whether or not appellant, on October 14, 1926, as a reasonable person, had probable cause to believe, and did actually believe that respondent committed the crime of perjury in verifying his complaint filed on July 2, 1926. It must be borne in mind that the criminal complaint was filed more than three months after the perjury was alleged to have been committed and three weeks before the civil action was tried in which respondent was endeavoring to collect considerable damages from appellant. It was also three weeks prior to the trial of the action to quiet title, brought by the J. C. C. Company against respondent involving the title to the land sold by appellant to the corporation. Upon the results of these actions would depend the considerable profit to appellant from the sale of the land to the corporation instead of respondent. Of course, this would not show lack of probable cause, but it would shed considerable light upon the motive of the prosecutrix in filing the criminal complaint. The motive which actuates

a person in performing an act has an important bearing upon the state of mind and the good faith of the person so· acting. While good faith or the lack of it bears principally upon the question of malice it should also be considered in measuring the belief of the person in the rectitude of the act in question. If the prosecutrix was moved by a bad motive in filing the criminal complaint against respondent the trial court could take this fact into serious consideration in determining whether or not appellant believed that perjury had been committed when the criminal complaint was sworn to by her.

The portions of the complaint in the civil action verified by respondent which appellant maintains were false are the allegations that $5,000 was paid to appellant on the purchase price of Pueblo Lot No. 1213 on June 3, 1926, and that respondent wilfully swore to such fact knowing it to be false at the time he made the oath. Here again we must measure the state of mind of the respondent for it is not sufficient to support the charge of perjury that the accused swears to a material fact that is false, the false swearing must be knowingly and wilfully done. (Secs. 118, 118a, Pen. Code; *People* v. *Wong Fook Sam,* 146 Cal. 114 [79 Pac. 848]; *People* v. *Von Tiedeman,* 120 Cal. 128 [52 Pac. 155].) The word ''wilful'' has been defined as a synonym of ''voluntary'' or ''intentional.'' (*Pfitzer* v. *Candeias,* 53 Cal. App. 737 [200 Pac. 839]; *Parsons* v. *Smilie,* 97 Cal. 647 [32 Pac. 702].) An act is said to be wilfully done when it is done designedly, intentionally or perversely (*Lynch* v. *Commonwealth,* 131 Va. 762 [109 S. E. 427]; *State* v. *Smith,* 159 Minn. 511 [199 N. W. 427]; *Gatewood* v. *Commonwealth,* 215 Ky. 360 [285 S. W. 193]), and without reasonable excuse. (*Cover* v. *Taliaferro,* 142 Md. 586 [122 Atl. 2].) Knowledge has been defined as actual information of a fact; the actual state of knowing, and not speculation, opinion or constructive notice (*Witherow* v. *United American Ins. Co.,* 101 Cal. App. 334 [281 Pac. 668]). For an act to be knowingly done it must be with a knowledge of the actual facts (*People* v. *McCalla,* 63 Cal. App. 783 [220 Pac. 436]), and must be done intentionally. (*State* v. *Wilson,* 41 Idaho, 598 [242 Pac. 787]; *United States* v. *Hughes,* 278 Fed. 262.) Therefore when appellant accused respondent of the

crime of perjury she must have had probable cause to believe, and must have actually believed that respondent not only swore to something that was false but did so wilfully and knowingly.

That the sum of $500 was actually paid to appellant shortly after April 15, 1926, there seems to be no reasonable question. The check of Christian to Green bears her indorsement and the check was paid. She evidently received and retained this money and credited the J. C. C. Company with this payment on the purchase price of the property in her sale to it. Forty-five hundred dollars was actually deposited in the Union Trust Company of San Diego, a branch of the Union Title Insurance Company of San Diego, on June 3, 1926. At the suggestion of an officer of the title company, handling the escrow for appellant and respondent, it was deposited with the trust company and not the title company because of the several trust deeds that would have to be prepared in the completion of the sale from Stewart to Green under the escrow instructions held by the title company. While appellant was present at the offices of the title company and the trust company during this transaction and at the time the money was deposited, she denied actual knowledge of the deposit. Her testimony in this regard was flatly contradicted by other witnesses. The fact remains that this money was actually deposited on account of the purchase price of the property by the Seaboard Realty Company under Christian's option of purchase from Green and was actually paid to appellant through escrow at a later date as part of the purchase price on her sale to the J. C. C. Company. This is not disputed. The money was received by the Seaboard Realty Company from sales of lots in Pueblo Lot No. 1213, between the date of the Green-Christian option and June 3, 1926, and during the time that appellant was dealing with respondent as the purchaser of the property. The trial court's conclusion that, under these facts, respondent's statements in his complaint that the $5,000 was paid to appellant on June 3, 1926, and was not wilfully and knowingly false and therefore not perjury, cannot be disturbed by this court. Appellant attempted to rely upon the findings of the trial court in the cases of *Green* v. *Stewart* and *Bunce and J. C. C. Company* v. *Green,* to

the effect that this money was not actually paid by Green to Stewart, to rebut and overcome this conclusion in the case before us. We may adopt these findings and still not change our conclusions because the question of whether or not Green's sworn statement was wilfully and knowingly made was not involved in either of these cases and therefore was not covered by these findings and judgments.

As additional circumstances in further support of the determination of the trial court that appellant did not have probable cause for charging respondent with perjury, we find that on the eighteenth day of June, 1926, she entered into a written contract with Sidney Cole, who was acting for the J. C. C. Company, agreeing to sell the real property involved, to Cole for $20,000. The day before, the J. C. C. Company had received an assignment of the rights of Christian and the Seaboard Realty Company under the Green option, under which Cole, Christian and Roger E. and Roswell C. Jones, under the name of the Seaboard Realty Company had been selling parts of Pueblo Lot No. 1213, and collecting money therefor. On June 18, 1926, Green's rights under his option of purchase and the escrow instructions were in full force and effect. Appellant did not attempt to terminate them until the next day. She had knowledge of all of these facts long before she swore to the criminal complaint on October 14, 1926. She also had received the very $5,000 that was paid or deposited under the Green option and escrow several months before this date although she actually received it under the terms of her contract with Cole dated June 18, 1926. Under all the circumstances of the case we believe the trial court was justified in concluding that there was no probable cause for appellant charging respondent with perjury and that the jury had ample grounds upon which to base its verdict finding that appellant was actuated by actual malice in so doing.

■ Appellant seeks to escape the results of her acts by maintaining that she relied upon the advice of counsel in becoming the prosecutrix of respondent. She did consult her own attorney and one of the deputy district attorneys of San Diego County before the complaint was signed by her and was advised that perjury had been committed by respondent. In order to avail herself of this defense the

evidence must show that the advice she relied upon was given her after a full and fair disclosure to the attorney of all the facts within her knowledge tending to prove or to disprove the claim that there was probable cause to believe respondent was guilty of the crime charged. (*Williams* v. *Casebeer*, 126 Cal. 77 [58 Pac. 380] ; *Stone* v. *Wolfe*, 168 Cal. 261 [141 Pac. 1190].) She must also act upon the advice in good faith (*Burke* v. *Watts*, *supra; Murphy* v. *Davids*, 181 Cal. 706 [186 Pac. 143]). While appellant testified that she made a full, fair and complete statement of all the facts of the case within her knowledge to the attorneys, her testimony is contradicted. On this point the weight of evidence is against her. There being a conflict in the evidence the verdict of the jury resolved it in favor of respondent which is binding on this court.

Our conclusion that the evidence shows malice on the part of appellant and a want of probable cause for her swearing to the criminal complaint against respondent disposes of her contention that the evidence does not support the verdict of the jury.

■ She next maintains that the verdict and judgment were so excessive as to indicate passion and prejudice against her. Respondent had been a resident of San Diego for several years prior to his arrest and was in business there. He was on the criminal jury venire and was arrested when leaving the jury-box after participating in a verdict in a criminal case. He was placed in the felons' tank of the San Diego county jail where were confined convicts upon whose cases he had sat as a juror. After four and one-half hours' confinement he was released on $2,000 bail. The circumstances of his arrest were so unusual that it was given considerable publicity in the daily papers of San Diego. He paid $350 to his attorneys for his defense against the charge. He testified that he suffered humiliation and chagrin and that his business was seriously damaged.

It is the province of the jury and then of the trial court upon motion for new trial, to determine and fix the amount of damages awarded a litigant. They have the witnesses before them and can weigh and consider all the circumstances of the case. All presumptions are in favor of the

correctness of the judgment, and under the circumstances of this case we cannot hold it excessive. (*Scott* v. *Times-Mirror Co.*, 181 Cal. 366 [12 A. L. R. 1007, 184 Pac. 672].)

A careful review of the record before us leaves the conclusion that both appellant and respondent, together with certain others connected with the transaction, need schooling in the elementary principles of ordinary honest business ethics. The facts have been resolved in favor of the respondent in the court below and this court will not disturb the judgment in view of the conflicting evidence and the inferences, presumptions and conclusions to be drawn from it. Certainly appellant is not the least blameworthy of the participants in the transactions which led up to the filing of this case. Her motives in instituting the criminal action which caused the arrest of respondent are not above serious suspicion in view of the impending trials of the two civil actions in the Superior Court of San Diego County upon the results of which would depend a profit of $4,000 to herself. If she was attempting to force a settlement of the civil actions through a criminal prosecution this fact should, and undoubtedly did have a strong influence upon the trial court and jury in finding against her. In appellant's own testimony she gave color to such suspicion by the following:

"Q. Why did you wait from July 2nd until the 14th day of October before you made your criminal complaint against Green for verifying his complaint in the action against you?

"A. Because Mr. Green had brought suit against me and there was no—I didn't know he had committed perjury until he did swear to his complaint against me. . . . A. Well, the title had to be cleared up and they came to me to see if I could do anything about clearing it up. Then after that the criminal case was started."

If the attorneys who advised her that perjury had been committed had known all of the facts of the case within the knowledge of appellant we do not believe the criminal complaint against respondent would have been filed.

We have examined all of the rulings of the trial court in sustaining or overruling objections to questions asked of witnesses which appellant has assigned as error and can find no prejudicial error in any of them. An extended re-

view of these rulings would unduly extend this opinion and could serve no good purpose.

Judgment affirmed.

Barnard, J., and Ames, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 14, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 13, 1930.