[Civ. No. 14997. Second Dist., Div. One. July 3, 1946.]

BENNIE McCHRISTIAN, Respondent, v. HARRY M. POPKIN et al., Appellants.

Sidney A. Moss and Alfred Gitelson for Appellants.

· Francis J. Gabel and Jean Wunderlich for Respondent.

WHITE, J.—By this action plaintiff sought damages for injuries claimed to have resulted from an assault and battery committed upon him by the defendant Willie B. Chiselm, a "special officer" at the Lincoln Theatre, operated by the remaining defendants. Plaintiff also asserted that the defendant Chiselm, in committing the assault, acted within the scope of his employment by the proprietors of the theater. In the second cause of action of his complaint plaintiff alleged that the defendant proprietors ratified the wrongful act of the defendant Chiselm and retained him in their employ, "to plaintiff's further damage by way of punitive damages" in the sum of $35,000. The prayer was for general damages, punitive damages, and special damages "to be later included herein by amendment," but no such amendment was filed. Trial before a jury resulted in a verdict in favor of plaintiff and against all defendants awarding damages in the sum of $10,000. From the judgment entered on such verdict, the defendants have appealed.

It is asserted by the defendant proprietors of the theater that the judgment and verdict are not supported by any evidence that defendant Chiselm was acting within the scope of his authority and course of his employment; that the wrongful acts were committed outside the theater by direction of "a police officer of the City of Los Angeles" and therefore were not within the scope of Chiselm's authority; that the court

erred in its instructions to the jury, and that the damages are excessive. On behalf of appellant Chiselm, who has filed a separate brief, it is likewise urged that the court gave erroneous instructions.

Respondent, a young man of the age of 19 years, who had worked at intervals at odd jobs around the theater during the preceding five years, testified that he knew the defendant Chiselm although he had not talked to him because he did not like him very much; that he had seen Chiselm at various times taking tickets and checking stubs in the theater. He testified that he entered the theater Sunday afternoon, March 26, 1944, in company with two young ladies; that during the performance he left his seat to go to the lavatory; that as he was crossing the lobby defendant Chiselm asked to see his ticket stubs, which he showed to Chiselm, who said that since he had seen the picture he would have to go out. He denied that he had seen the picture, but said that he would leave if he could go back into the theater and get the girl he had brought; that he would go to another show where he could see the same picture "without a special officer bothering me"; that Chiselm refused to let him go back; that respondent insisted upon going back, whereupon Chiselm hit him and knocked him to the outside of the ticket office. Plaintiff then ran out of the theater and defendant Chiselm chased him around the corner from the theater, knocked him down, got astraddle of him, hit his head against the pavement and also against an automobile. Chiselm then told him to go home, but he waited for the two girls to come out. Plaintiff went to the police station and was directed as to where he should go to make a complaint. He then returned and stood across the street from the theater. At this time the manager of the theater came over to him and told him that Chiselm said he was drunk to which he replied that he had not been drinking. In addition to his own testimony, plaintiff introduced the testimony of three physicians as to the extent of his injuries, as well as the testimony of several witnesses in corroboration of plaintiff's story as to the circumstances of the assault. Plaintiff's version of the episode was contradicted by defendant Chiselm, by the head usher of the theater and by a police officer on duty outside the theater, all of whom testified that plaintiff was drunk, disorderly, profane, and struck the first blow. It was admitted that a scuffle took place in ejecting respondent from the theater.

It is not contended that the evidence is insufficient to

support the finding of the jury against appellant Chiselm. The appellant theater proprietors urge, however, that no evidence was introduced to show that the assault was committed by Chiselm while acting within the scope of his authority and course of his employment. It is argued that aside from the evidence that Chiselm's duties included checking ticket stubs, "there was no evidence introduced by respondent nor any testimony whatsoever as to the nature of the duties of appellant Chiselm; the purpose for which he was employed; whether he did nor did not have any authority to, or whether it was or was not a part of his duties to, eject any person from the theater; whether or not that which it is alleged he did was in the transaction of the business of these appellants."

The record reflects that defendant Chiselm was a special police officer of the city of Los Angeles, admittedly employed by defendant theater owners. As to defendant Chiselm's duties, the manager of the theater testified as follows:

"Q. And among Mr. Chiselm's duties has been the checking of tickets, ticket stubs? A. Yes, sir.

"Q. And he put people out of the theater who remained there longer than one show? A. No, not necessarily longer than one show. He checked the tickets to see—we had a lot of people sneaking into the theater, breaking into the theater, and we check stubs, and we also had to check tickets of a lot of little kids who came in and stayed all day, and at parents' request we checked the theater, but we never objected to anyone in the theater staying over through a show."

That defendant Chiselm's duties were not confined to checking tickets or ticket stubs is shown by his own testimony, when he stated that he did not remember checking any tickets on the afternoon in question because "I was a little busy that afternoon after the extra officer came on, and I had business that took me upstairs." The "extra officer" was Arthur D. Wilson, a regularly appointed and acting police officer of the city of Los Angeles, who according to his own testimony was employed and paid by defendant theater owners for his work "on special detail at the theater that day," in which capacity he had served "on numerous occasions."

Andy Allen, employed as head usher and assistant manager of the theater, testified that on the day with which we are here concerned he noticed the plaintiff standing in the "aisle-way" and asked him "to find a seat and sit down"; that subsequently he encountered plaintiff near but outside of the men's

restroom, where he was "talking loud, and acting like someone did when he was drunk." The witness then requested plaintiff to "find a seat inside or outside," to which the plaintiff replied that he "ain't going to do either one." The assistant manager did not attempt to enforce his order given the plaintiff, but instead, according to his testimony, he "went upstairs and got Chiselm . . . and told him about this fellow and he came back down." The admitted altercation which gave rise to this litigation then ensued. While the evidence concerning the encounter was in marked conflict, the jury adopted the version thereof as given by plaintiff and the witnesses produced in his behalf. Appellants concede that under oft-repeated rules, this court cannot interfere with the conclusion arrived at by the triers of fact and the legally constituted arbiters thereof. If the jury believed, as their verdict indicates they did, the testimony offered in behalf of plaintiff and rejected that presented on behalf of the defendants, it must be held that, factually speaking, there is in the record evidence of sufficient substantiality to support the verdict rendered.

In view of the foregoing testimony, we are persuaded that the facts and circumstances thereof were sufficient for the jury to conclude therefrom that Chiselm had authority to patrol the theater, to check the ticket stubs, and to take such action as to him seemed necessary in order to preserve peace, order and decorum upon the theater premises. Indeed, upon the particular occasion with which we are here concerned, defendant Chiselm was specifically called by the assistant manager to handle a situation where plaintiff, a patron of the theater, was allegedly conducting himself in a loud and boisterous manner. The test of the employer's responsibility for the act of his employee was described in *Cosgrove* v. *Ogden,* 49 N.Y. 255, 257 [10 Am.Rep. 361], as "not whether such act was done according to the instructions of the master to the servant, but whether it is done in the prosecution of the business that the servant was employed by the master to do."

Section 2338 of the Civil Code, so far as applicable here, reads as follows: "A principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business. . . ." In fixing responsibility upon the employer, the test is whether at the time of doing the wrongful act the employee

was acting in behalf of the employer and not on his own account. It is not required that the employer expressly authorize the employee to commit the tort if it was committed in the course of the transaction of the employer's business. ▮ In the case at bar we are impressed that there is evidence justifying a finding that the conduct of defendant Chiselm was a part of and done in connection with the transaction of his employer's business, and was not a departure therefrom to accomplish an independent purpose of his own.

▮ Whether or not defendant Chiselm acted in the course of his employment in doing what the jury found he did is primarily a question of fact for the jury to determine. (*Hiroshima* v. *Pacific Gas & Elec. Co.*, 18 Cal.App.2d 24, 29 [63 P.2d 340] ; *Stansell* v. *Safeway Stores, Inc.*, 44 Cal.App.2d 822, 826 [113 P.2d 264] ; *Dolinar* v. *Pedone,* 63 Cal.App.2d 169, 175 [146 P.2d 237] ; 35 Am.Jur. 1040.)

▮ It is next contended by appellants that what defendant Chiselm did was done as a special police officer in the discharge of his police duties. This issue was not raised by the pleadings or at the trial, nor was any request made for appropriate instructions to the jury in that regard. Notwithstanding it is presented for the first time on appeal, we have considered the same and are convinced the contention is without merit. By their answers all defendants admitted that defendant Chiselm was an employee of defendant theater owners. As a special police officer, Chiselm's sworn duty was to preserve the public peace and to arrest those who were engaged in a breach thereof. As an employee of defendant theater owners, his duty was to protect his employers' property, check ticket stubs and maintain order upon the premises. In the operation of their business, it was necessary for defendant theater owners to so conduct the same as to make it attractive to their patrons. This policy necessitated their restraining or evicting anyone who might by rude or boisterous conduct annoy or offend others. There are many acts which might not be criminal but which would offend against good order, decorum and manners, which defendant theater owners would be authorized to restrain and justified in not permitting upon the theater premises. From the testimony in the case at bar and the acts of the assistant manager, we are convinced that there was evidence justifying the conclusion that it was in furtherance of this policy that defendant theater owners employed defendant Chiselm. In more than one way it is at once apparent that it would be to

the advantage of defendant theater owners to employ men who were regular or special police officers, but the fact remains that while so employed they were the employees of such theater owners and the latter were responsible for their acts done in the course of such employment. So far as such employees might make arrests for the commission of crimes upon the premises they were acting as police officers, but in checking ticket stubs, restraining unseemly, rude or boisterous conduct, and regulating good order in and about the theater, such employees were acting as agents of the theater owners and not as police officers. Under the circumstances here present, the contention of defendant theater owners that defendant Chiselm was acting solely in his capacity as a police officer, or that he acted under instructions of Police Officer Wilson, also employed in a similar capacity by defendant theater owners, cannot be sustained.

It is claimed by appellant theater owners that there was no evidence whatsoever of ratification by them of any alleged unlawful act of defendant Chiselm other than that the latter was retained in the employ of the former. The case of *Edmunds* v. *Atchison etc. Ry. Co.*, 174 Cal. 246, 249 [162 P. 1038], relied upon by appellants, is authority for the statement that failure to discharge an agent guilty of oppressive acts toward patrons of the employer is in itself evidence tending to show ratification. The intrinsic weight or value of such evidence is dependent upon the circumstances attending such retention by the defendant employer. If the employer, after knowledge of or opportunity to learn of the agent's misconduct, continues the wrongdoer in service, the employer may become an abettor and may make himself liable in punitive damages. In the instant case, Mr. Allen, assistant manager of the theater, admittedly knew everything that had occurred on the afternoon in question. True, his recitation of such events was in conflict with that of plaintiff, but the jury was entitled to believe the latter as to the true happenings which the assistant manager witnessed. Mr. Maloney, the theater manager, talked with plaintiff shortly after the altercation, and again the jury was entitled to disbelieve the manager's story as to what plaintiff told him and to accept as true plaintiff's testimony as to what he related to Manager Maloney in connection with what happened to him at the hands of defendant Chiselm. Defendant theater owners had ample opportunity to learn of the alleged conduct of their employee and if they failed to avail them-

selves of such opportunity, but continued the employee in their service without making investigation or attempting to redress the wrong claimed to have been done, they cannot now be heard to complain.

Appellant theater owners urge that the court committed errors of law prejudicial to them in the giving or failure to give certain instructions. In that regard, it is first asserted that the court erred in giving four instructions whereby the jury was advised as to the liability of appellant theater owners upon the theory of *respondeat superior* without admonishing the jury that such appellants were not liable in the event that defendant Chiselm was acting in the discharge of his duties as a police officer, and that "it is a presumption of law that the acts of a special police officer are performed in his capacity as such officer." The answer to this claim is that appellant theater owners neither pleaded, nor offered any instruction to the effect, that defendant Chiselm was acting in the discharge of his duties as a police officer. All of the testimony was to the effect that defendant Chiselm was attempting, not to arrest plaintiff for any infraction of the law, but to eject him from the theater, and as directed by Police Officer Wilson, "take him on down to the corner and get him around the corner." If appellant theater owners desired to raise the affirmative defense that any acts of defendant Chiselm were in the line of duty as a police officer or under the direction of a regular police officer of the city of Los Angeles and that no liability could therefore attach to them, they should have done so by appropriate pleadings and should have made a timely request for proper instructions to the jury thereon. The instructions complained of contained all the elements properly essential to a recovery under the pleadings and the evidence, and therefore met the requirements prescribed in *Douglas* v. *Southern Pacific Co.*, 203 Cal. 390, 393 [264 P. 237], and *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 169, 170 [153 P.2d 338], for formula instructions.

Appellant theater owners earnestly insist that the trial court erred to their prejudice in giving to the jury, at the request of respondent, formula instructions advising them that a verdict might be rendered for plaintiff if the jury found certain facts to be true, without admonishing the jury that the facts upon which a verdict for plaintiff could be rendered must be proven by a preponderance of the evidence, and that the court failed to instruct the jury upon which party the

burden of proof rested. We do not deem it necessary here to set forth the many instructions about which appellant theater owners complain, as including a formula and not containing all elements essential to a recovery, because to do so would unduly prolong this opinion, and as we view all the instructions together in their entirety the jury was fully and fairly admonished as to the law applicable to the case. In such a situation it has been held that although certain instructions may not include all of the factors essential to a recovery by the plaintiff, the use of such formula instructions does not constitute prejudicial error. (*Miner* v. *Dabney-Johnson Oil Corp.*, 219 Cal. 580, 588 [28 P.2d 23]; *Westover* v. *City of Los Angeles*, 20 Cal.2d 635, 638 [128 P.2d 350]; *Wells* v. *Lloyd*, 21 Cal.2d 452, 457 [132 P.2d 471]; *Mazzotta* v. *Los Angeles Ry. Corp.*, *supra*, pp. 165, 170.) In the case of *Dawson* v. *Boyd*, 61 Cal.App.2d 471, 483 [143 P.2d 373] (hearing denied by Supreme Court), it was said:

"Plaintiff also urges that the due care instruction was a formula instruction, and contends that since it omitted all reference to the theory of a statutory violation it was incomplete and erroneous, citing *Rush* v. *Lagomarsino*, 196 Cal. 308 [237 P. 1066]. She also contends the due care instruction was in conflict with the statutory violation instruction. *The rigid rules formerly applicable to formula instructions have been greatly modified in recent years. Where the omitted element is fully, fairly and correctly covered by other instructions,* and where, from a reading of the instructions as a whole, it is obvious that the jury was not misled, the failure to include one element in a formula instruction is not prejudicial. [Citing cases.]" (Italics added.)

In the instant case the court adequately and correctly instructed the jury that "the burden of proof by a preponderance of the evidence is, however, on the plaintiff, to show that the said Willie B. Chiselm did commit an assault and battery upon the plaintiff, as alleged in his complaint, and also to prove by a preponderance of the evidence that at the time of the alleged assault and battery, if you find the same did occur, the defendant Willie B. Chiselm was acting in the scope of his employment and in connection with the business of the remaining defendants. . . ."

Again the court admonished the jury: "In civil actions the party who asserts the affirmative of an issue must carry the burden of proving it. In other words, the 'burden of proof' as

to that issue is on that party. This means that if no evidence were given on either side of such issue, your finding as to it would have to be against that party. When the evidence is contradictory, the decision must be made according to the preponderance of evidence, by which is meant such evidence as, when weighed with that opposed to it, has more convincing force, and from which it results that the greater probability of truth lies therein. Should the conflicting evidence be evenly balanced in your minds, so that you are unable to say that the evidence on either side of the issue preponderates, then your finding must be against the party carrying the burden of proof, namely, the one who asserts the affirmative of the issue.''

The court further instructed the jury: ''Whenever in these instructions I state that the burden, or the burden of proof, rests upon a certain party to prove a certain allegation made by him, the meaning of such an instruction is this: that unless the truth of that allegation is proved by a preponderance of the evidence, you shall find the same to be not true. The term 'preponderance of the evidence' means such evidence as, when weighed with that opposed to it, has more convincing force, and from which it results that the greater probability of truth lies therein.''

The jury was further instructed as follows:

''While there are several defendants in this action, 3 of them, Popkin, Ringer & Berman, have been sued on the theory that they are principals for whom the other defendant Chiselm was acting as agent, within the scope of his authority at the time of the events out of which the assault and battery occurred. Whether the facts support this theory is an issue that you may have to decide, inasmuch as plaintiff's contentions in this respect have been denied.

''If you find that the defendant Chiselm is not liable, then, of course, it becomes unnecessary to consider the question of agency, because in that event the defendant Popkin, Ringer & Berman may not be held liable, even if agency existed. But if you find that the defendant Chiselm is liable, you then must decide whether, at the time of his participation in events proximately causing the alleged assault or battery, he was acting as agent for the other defendants and within the scope of his authority. If you find either that defendant Chiselm was not then the agent of the other defendants, or, if the agent was not acting within the scope of his authority, then your verdict must be in favor of the defendants Popkin, Ringer & Berman.

But if you find that the one defendant was acting as the agent of the others, and within the scope of his authority, then if one is liable, all are liable.''

■ In other instructions the court correctly set forth what constitutes an assault or battery, giving the code definitions thereof (Pen. Code, §§ 240, 242). If appellant theater owners desired further elaboration upon these instructions they should have so requested by proffering additional instructions thereon.

In several instructions the court admonished the jury that plaintiff could not recover against defendant theater owners for the wrongful acts of their codefendant Chiselm unless such wrongful acts, if any, ''were committed in and as a part of the transaction of the business of said Harry M. Popkin, Jack Y. Berman and Arthur Ringer, copartners doing business as Lincoln Theatre.'' The court also advised the jury of the liability of a principal to third parties for the wrongful acts of his agent in the language of section 2338 of the Civil Code.

The court emphatically instructed the jury ''that an employer is not liable for the malicious acts of his employee committed outside of the scope of such employment. The wrongful acts must be those which the servant is empowered under such circumstances to do. It must be something which the employment contemplated''; and ''if an employee steps aside from his employer's business, for no matter how short a time, to commit a wrong not connected with such business, the employer is not responsible to the person injured by such wrong''; and further, that ''when an employee acts without any reference to the services for which he is employed, and not for the purpose of performing the work of his employer, but to effect some independent purpose of his own, the employer is not responsible in that case for either the act or omission of the employee.''

The jury was also admonished with reference to the right and duty of a theater proprietor to insist that every patron shall conduct himself with proper decorum, so that good order may be preserved, and to that end such proprietor may adopt and enforce reasonable and proper regulations, using if necessary reasonable force to evict a patron who refuses to leave and persists in violating proper and reasonable regulations. The court also instructed the jury as to the terms of a city ordinance prohibiting any one except an usher or employee of any theater while actually on duty from standing in or obstructing any aisle, passage way or exit of such theater, and

again admonished the jury as to the right of a motion picture theater operator to remove therefrom any person persisting in a violation of said ordinance. The court gave a further instruction on the right of defendant Chiselm to use such force as to him appeared reasonably necessary to repel or resist any unlawful assault upon him by the plaintiff.

Contrary to appellant theater owners' contention, the court properly instructed the jury upon the essential elements necessary to fasten liability upon such appellants, advising the jury as heretofore set forth that such acts must be committed within the scope of the employee's authority or course of employment. With reference to any award of punitive and exemplary damages, the jury was properly instructed as to the law applicable to subsequent ratification and approval of any malicious or oppressive acts of the employee by the employer as a prerequisite to an award of exemplary damages against such employer.

From a reading of the instructions as a whole we are not impressed with appellant theater owners' claims that plaintiff's instruction No. 9 was confusing and misled the jury by advising them that even though they were convinced that plaintiff was entitled to recover judgment only against defendant Chiselm they might nevertheless award such damages as in their opinion would compensate plaintiff as against all defendants. It cannot be assumed that the jury believed that if under the evidence only one of the defendants was liable that they could or would assess damages against defendants whom they believed to be innocent of wrongdoing. Furthermore, the court in clear and understandable language pointed out to the jury under what circumstances the defendant Chiselm, the employee, would be liable, and in equally clear language advised the jury under what circumstances such liability would extend to defendant employers.

An appellate tribunal, in reviewing instructions, must consider the charge as a whole and give to them in their entirety a reasonable construction from the standpoint of their probable effect upon the jury. Guided by that rule, an examination of the entire charge given in the instant case does not reveal any prejudicial error requiring a reversal of the judgment. Whatever errors appellants have pointed out in certain instructions were errors of omission, and all such claimed omissions were supplied by other instructions to which we have adverted herein, so that no prejudice ensued to the

defendants. (*Wells* v. *Lloyd, supra,* 452, 458, 459; *Westover* v. *City of Los Angeles, supra,* 637; *Miner* v. *Dabney Johnson Oil Corp., supra,* 583; *Mazzotta* v. *Los Angeles Ry. Corp., supra,* 170.)

Finally, appellant theater owners earnestly urge that the damages herein awarded to plaintiff were excessive and appear to have been given under the influence of passion and prejudice. In this connection appellants contend that the general verdict herein included an award to respondent of punitive damages, the court having instructed the jury upon the request of respondent with reference thereto. As heretofore indicated, the jury was properly instructed upon the issue of exemplary damages, but just what sum was awarded for compensatory damages and for punitive damages does not appear. No request was made for a form of verdict suitable for such segregation of damages. Upon the authority of *Phelps* v. *Arnold,* 112 Cal.App. 518, 520 [297 P. 31], we shall therefore regard both elements of damage as entering into the total, and properly so. There is in the record substantial evidence that plaintiff was set upon and forcibly and violently beaten without provocation. There was medical testimony which contained a history showing that following the assault upon him plaintiff suffered from what he termed "spells," which were characterized by "an intense headache and then a feeling of confusion and on several occasions a collapse and falling to the ground . . .; that on several occasions when these spells came on him he had to be taken to his home by bystanders in automobiles and then he would be unable to carry on his work although he had tried to do it." There was also medical testimony that plaintiff's complaints were such as "one does see characteristically in patients who have had an injury to the brain. . . ." Other medical testimony was to the effect that there was "some change in the personality" of plaintiff, attributable to "the concussion of the brain which he suffered." One doctor testified that "his condition will be permanent; he will suffer always the same troubles in the kind of headaches or nervousness, that diagnosis, all of his life." There was also evidence given by plaintiff's acquaintances as to his suffering from fainting spells, dizziness and inability to work.

In 4 American Jurisprudence, under "Assault and Battery," page 213, we find the following with reference to compensatory damages: "The plaintiff should be awarded such

damages as will fully compensate him for the injuries directly flowing from the alleged assault and for all detriment proximately caused by the defendant's wrongful act. This includes compensation for the prospective damage that is certain to follow from the nature of the injury—that is, all consequences of the injury, future as well as past—and an allowance for mental suffering and for the indignity, disgrace, and mortification to which he has been subjected or which he has experienced. Other elements that properly may be taken into consideration by the jury in determining the amount of the damages to be awarded to the plaintiff in an action for assault and battery include the loss of time and labor suffered by the plaintiff as a result of the injury, expenses incurred for medical and surgical attention made necessary by the assault, physical pain and suffering, diminished capacity for work caused by the injuries received, impaired mental powers, mutilation, and disfigurement.''

▇▇▇ Relief from allegedly excessive damages is available only when it appears that the damages awarded have been given under the influence of passion or prejudice. (Code Civ. Proc., § 657, subd. 5.) Treating the verdict herein as one in which the elements of both compensatory and exemplary damages entered into the total, and in view of the circumstances surrounding the assault made upon the plaintiff, as testified to by several witnesses, the verdict cannot be said to be excessive or that it was not the result of the fair, unbiased judgment of the jury. As was said in *Green* v. *Stewart,* 106 Cal.App. 518, 531, 532 [289 P. 940], ''It is the province of the jury and then of the trial court upon motion for new trial, to determine and fix the amount of damages awarded a litigant. They have the witnesses before them and can weigh and consider all the circumstances of the case. All presumptions are in favor of the correctness of the judgment, and under the circumstances of this case we cannot hold it excessive.'' Also in *Wilson* v. *Fitch,* 41 Cal. 363, 386, we find the following:

''The Court will not interfere in such cases unless the amount awarded is so grossly excessive as to shock the moral sense, and raise a reasonable presumption that the jury was under the influence of passion or prejudice. In this case, whilst the sum awarded appears to be much larger than the facts demanded, the amount cannot be said to be so grossly excessive as to be reasonably imputed only to passion or preju-

dice in the jury. In such cases there is no accurate standard by which to compute the injury, and the jury must, necessarily, be left to the exercise of a wide discretion; to be restricted by the Court only when the sum awarded is so large that the verdict shocks the moral sense, and raises a presumption that it must have proceeded from passion or prejudice.''

So in the case at bar, while plaintiff's damages, so far as permanent injuries were concerned, might have been fully compensated by a lesser amount than was awarded, that was a matter within the sound discretion of the jury in the first instance and the trial judge on hearing of the motion for new trial. After a review of the decisions of the appellate courts of this state in similar cases, we cannot hold that the damages awarded in the case at bar were excessive, nor can we say, under all the facts and circumstances here present, that the damages are so outrageously excessive as to suggest at first blush passion, prejudice or corruption. Therefore they cannot be set aside on appeal. (*Conner* v. *Henderson*, 108 Cal.App. 237, 242 [291 P. 641].)

Appellant Chiselm, the theater employee, has filed a separate brief in his own behalf, but the contentions therein made are similar to those advanced by appellant theater owners. The main attack is upon the instructions given and claimed omissions therein. These claims, as well as appellant Chiselm's contention concerning his right to use force, are adequately answered by what we have heretofore said of and concerning the instructions given, their correctness and freedom from prejudicial error as to any of the appellants.

For the reasons herein stated, the judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied July 22, 1946.