[Civ. No. 4856.   Fourth Dist.   Aug. 23, 1954.]

ALLAN R. WOOD, Appellant, v. MONA S. DAVENPORT, Respondent.

Riley & Ferguson for Appellant.

Gray, Cary, Ames & Frye for Respondent.

MUSSELL, J.—Plaintiff Allan R. Wood appeals from a judgment in his favor for the sum of $1,750, general damages, in a personal injury action.. The complaint included a statement of a cause of action by Ralph E. Wood, father and guardian of plaintiff, for medical expenses and loss of earnings of plaintiff Allan R. Wood, and the jury returned a verdict in his favor in the sum of $5,800. There is no appeal from the judgment in favor of Ralph E. Wood. The defendant admitted liability and the issue of damages only was involved at the trial.

On September 5, 1952, defendant drove her automobile into the Midway Auto Laundry in San Diego. Plaintiff Allan R. Wood, aged 16, was then and there employed as a cashier and "vacuumer" and was engaged in cleaning another automobile. Defendant lost control of her car and it crashed into the car appellant was cleaning. He attempted to get out of the way but was pinned down by defendant's car and sustained a fractured femur. He was taken to the Hillside Hospital in San Diego where the fracture was set by open reduction, a metal plate was inserted and the leg placed in a heavy cast. On September 13, 1952, appellant was transferred to the Mercy Hospital and placed in traction for three

months. On January 15, 1953, he became gradually ambulatory on crutches and a lighter cast was put on. He was discharged from the hospital on February 4, 1953, and at that time was able to be "up and about," using crutches. While in the hospital appellant suffered from a uretal stone due to lying in bed for a protracted period. However, the stone was removed within 24 hours and he suffered no further pain therefrom.

Dr. Carpenter testified that appellant "has done quite satisfactorily" since his injury; that at the time of the trial, August 6, 1953, healing had taken place satisfactorily; that there was some retardation of completion of healing across the fracture site because of presence of screws in the metal plate; that it would be necessary to perform a further operation to remove the plate and screws; that the fracture would go to a complete and satisfactory union. Dr. West testified that after the removal of the screws and plate there would be a convalescence period of eight to fourteen months and thereafter no disability whatever, and that the removal of the plate and screws was not a complicated procedure.

Appellant first contends that certain questions asked upon cross-examination were irrelevant and immaterial; that this, coupled with the failure of the court to sustain the objections thereto, was highly prejudicial and constituted a denial to appellant of a fair and impartial trial. The questions related to appellant's conduct after he was taken home from the hospital. He was asked if he were able to be up and about shortly after returning to his home on February 4, 1953, and replied that the only time he left the house was "to go some place in the car with his parents." When asked if he were out with a "gang of fellows, running around" the Davenport residence on June 3, 1953, he answered "No." The following questions were then asked and answered:

"Q. You are certain you were not out there for the purpose with a group of young fellows, racing the car around the Davenport residence, up in their driveway, and some of them went up and banged on the door of the house? A. I wasn't.

"Q. You are certain of that? A. Yes.

"Q. Very well, are you certain you were not picked up by the police of San Diego on June 3rd of this year for being out running around the Davenport residence with a group of fellows? A. Not for that.

"Q. What were you—were you out at their residence on June 3rd, 1953, of this year? A. Near there, but I wasn't there.

"Q. You were not at their residence or up in their driveway in an automobile, and some of them banging on the door with sticks, clubs, and you were later picked up by the police?

"MR. HOLLER: Objected to. It is immaterial what someone else did.

"MR. ARCHER: I am asking him——

"MR. HOLLER: Let me make my objection, please.

"MR. ARCHER: I beg your pardon.

"MR. HOLLER: I object to it on the ground it is immaterial what someone else has done, and it has been asked and answered. I assign the remarks of counsel as prejudicial misconduct, attempting to show what somebody else might have done, to influence and prejudice the jury against this plaintiff.

"MR. ARCHER: If I haven't made that question clear, Your Honor, I will now. I am asking this witness, Allan Wood, if he wasn't there and if he didn't engage in the activities I have described. I am not concerned with what any other boy or boys might have been doing. I am asking this witness if he wasn't there at their residence doing the things I have indicated and was arrested for having been there, and he indicated in one answer he wasn't, and he was somewhere.

"THE COURT: Do you understand the question?

"THE WITNESS: Yes, sir, I do.

"THE COURT: The objection is overruled—denied. Answer if you can.

"THE WITNESS: I wasn't.

"BY MR. ARCHER: Q. You were not arrested in that neighborhood on that day? A. No.

"Q. Were you picked up by the police in that neighborhood on that day? A. No."

It is apparent from the record that many of the foregoing questions and answers were not objected to by counsel for plaintiff and objections thereto cannot be made for the first time on appeal. (*Hughes* v. *Grandy*, 78 Cal.App.2d 555, 570 [177 P.2d 939]; *Palpar, Inc.* v. *Thayer*, 83 Cal.App.2d 809, 811 [189 P.2d 752].) One question was objected to on the ground that it was immaterial what someone else had done. Counsel then reframed the question to meet the objection. ■ The trial court admitted the evidence for impeachment purposes and in that connection instructed the jury as follows:

"At this point, I want to refer to a bit of evidence which

was introduced yesterday, and at which time the attorney for the defendant asked Allan Wood certain questions cerning [sic] whether he was personally involved in an incident along with other boys which happened at or near the Davenport residence. The question was objected, or those questions were objected to concerning that, and I overruled the objection and admitted the evidence feeling that it was what we call a foundation question for impeachment. After laying the foundation for impeachment, it was necessary that some contradictory testimony be given in order to attempt to impeach the witness of whom that question was asked. In that case, no such contradictory testimony was given. Therefore, the impeachment has not been completed, and as to those questions that were asked and the answers given to those questions cerning [sic] any incident around the Davenport home, will be ignored by the jury. I know after a word is once spoken, it is mighty hard to erase it from your minds, but that is the law as I instruct it to you. You should do your utmost to entirely erase that from your minds, that bit of evidence.''

While it was improper to attempt to show that appellant had been arrested for some disturbance, evidence as to his activities after his injury was admissible as bearing on the extent of his disability as well as for impeachment purposes. As noted, the liability of defendant was admitted and the only question was as to the amount of damages to be allowed plaintiff for pain and suffering. In view of the evidence offered and the court's instruction to the jury to ignore the questions and answers given, we cannot hold that prejudicial error resulted therefrom.

■ Appellant next argues that the award of $1,750 as general damages is so grossly inadequate as to indicate passion and prejudice on the part of the jury and so totally without support in the evidence as to necessitate a reversal of the judgment. This contention is without merit. Special damages amounted to less than $4,550 and plaintiff's father was awarded a total sum of $5,800 which included medical expenses and loss of earnings of appellant. The award to appellant of $1,750 was apparently for pain and suffering. In 15 American Jurisprudence, page 482, section 72, it is said that pain and suffering have no market price. They are not capable of being exactly and accurately determined and there is no fixed rule or standard whereby damages for them can be measured. Hence, the amount of damages awarded for them must be left to the judgment of the jury, subject

only to correction by the courts for abuse and passionate exercise. As was said in *McChristian* v. *Popkin,* 75 Cal.App. 2d 249, 263 [171 P.2d 85], quoting from *Green* v. *Stewart,* 106 Cal.App. 518, 531, 532 [289 P. 940]:

" 'It is the province of the jury and then of the trial court upon motion for new trial, to determine and fix the amount of damages awarded a litigant. They have the witnesses before them and can weigh and consider all the circumstances of the case. All presumptions are in favor of the correctness of the judgment . . .' "

In the instant case a motion for new trial was made and denied by the trial court. If the jury had made a mistake in the amount of the award, it became the duty of the trial court to correct it. He approved the verdict and its amount by denying the motion for new trial. (*Sassano* v. *Roullard,* 27 Cal.App.2d 372, 375 [81 P.2d 213]. See also *Post* v. *Alameda Amusement Co.,* 117 Cal.App.2d 588, 595 [256 P.2d 580].) In *Quirk* v. *City & County of San Francisco,* 105 Cal.App.2d 85, 87 [232 P.2d 893], the court said:

"When an appeal is based on the ground that the verdict is inadequate (as where it is claimed to be excessive) a reviewing court may not reverse unless it appears that '[I]t is so grossly disproportionate to any reasonable view of the evidence as to raise a strong presumption that it is based upon prejudice or passion.' (*Koyer* v. *McComber,* 12 Cal.2d 175, 182 [82 P.2d 941].)"

We cannot say that the amount awarded plaintiff Allan R. Wood indicated passion or prejudice on the part of the jury, especially in view of the fact that no permanent injury was involved and the trial court denied the motion for new trial.

Appellant finally argues that an award for general damages in an amount less than one-third of the special damages is so grossly inadequate as to shock the conscience or indicate passion and prejudice on the part of the jury. This position is untenable. The ratio between special and general damages is not controlling. Special damages such as hospital and physicians' charges are capable of exact determination and general damages cannot be calculated on the amount paid for such charges.

Judgment affirmed.

Barnard, P. J., concurred.