Jeanette MYERS, Appellant,

v.

Edson E. BLACKMAN, Jr., Appellee.

James W. HUNT, Appellant,

v.

Edson E. BLACKMAN, Jr., Appellee.

Nos. 1898, 1899.

Municipal Court of Appeals for the
District of Columbia.

Argued Feb. 4, 1957.

Decided April 1, 1957.

Claire O. Ducker, Sr., Washington, D. C., for appellants.

3. Smith v. District of Columbia, D.C.Mun.App., 99 A.2d 407.

Howard J. McGrath, Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

These appeals are taken from a judgment after a jury verdict for appellee, the defendant below in an action arising out of an alleged automobile collision on October 1, 1955. Plaintiff Myers was a passenger in the car operated by plaintiff Hunt, and each brought suit for injuries claimed to have been sustained when defendant's car allegedly collided with the rear of their car. The cases were consolidated for trial and remain so on appeal.

Only a partial transcript of the lengthy trial has been transmitted to us, presenting a single issue for determination: whether the court erred in admitting, over objection, the testimony of two police officers relating to the physical condition and conduct of plaintiff Hunt in the course of two arrests. Although this testimony concerned only plaintiff Hunt, it undoubtedly affected plaintiff Myers' case. Accordingly, our decision on this point will be dispositive of both cases.

The evidence of the officers was preceded by a sharp conflict in the testimony presented upon several of the material issues; in particular, whether the collision actually occurred at the time and place alleged by plaintiff Hunt, and the extent of his personal injuries. Hunt claimed that as a result of the collision he sustained a severe back injury which necessitated the use of a brace and a back support after other treatment failed; that while sleeping he had to use a bedboard; that the various movements of his body had been greatly impeded, and, when questioned about running, said that he had not tried to run. His doctor testified in even more detail as to his injury and stated that without the brace or back support, "he could not get around at all," nor could he carry on his job as manager of a tourist home, and that he "may have to wear that strap for a long time, it may be forever."

Defendant called another doctor who testified that he had examined Hunt some six months after the alleged collision and found no evidence of injury to substantiate his complaints, and that when he appeared for the examination he was not wearing a brace or strap. A police officer then testified that on March 28, 1956, while executing a search warrant for Hunt's tourist home, he talked with Hunt, informed him that he was looking for firearms, walked into the next room and found a firearm hanging behind the door. He then placed Hunt under arrest and "patted him down" for further weapons. When asked if he felt a back support or brace, the officer stated, "I did not feel anything else, just skin underneath his jacket." They left the tourist home and went to Hunt's residence. Hunt, however, did not want to enter through the front door; "he offered to climb the fence and open the rear door for us through the garage," but the offer was not accepted. The officer then found what "[they] were looking for," took Hunt to the precinct station and obtained a statement. He did not observe that Hunt required any assistance in getting in and out of the scout car or patrol wagon.

A second officer testified that on April 8, 1956, he saw Hunt jump out of a cab and hurry over to his car. He searched him from "top to bottom" but could not recall noticing any back brace. He took Hunt to the District Building and detained him overnight where he slept on a "slat of steel." He observed nothing unusual about his normal activities. The following morning Hunt asked for some milk because "his ulcers were bothering him," but made no complaints about his back.

The defense also introduced a certified copy of an indictment, to which Hunt had pleaded guilty, for possession of a submachine gun which was not registered with the Collector of Internal Revenue. On cross-examination, however, Hunt claimed that he was convicted for failure to pay a tax on the gun.

Plaintiffs contend that the testimony of the police officers, which tended to show arrests without subsequent convictions, should have been excluded because it was irrelevant to the main issues and was used instead to impeach Hunt's credibility; and as a general rule, such evidence may not be used for impeachment purposes in either a civil or criminal case.[1] Defendant's position is that the evidence was relevant to the issue of damages, and consequently it was not rendered inadmissible merely because it revealed that a crime may have been committed.[2] The issue thus resolves itself to a question of relevancy: if the evidence was relevant, it was admissible; if it was irrelevant to a material point, it was not admissible for any reason, and especially not for impeachment purposes. We believe that the testimony was relevant.

The extent of the injury, if any, to Hunt's back was an important issue in the case, because if a verdict went against defendant it would necessarily include damages. The evidence was offered with the definite purpose of disputing the contention of Hunt's personal injuries and the trial judge in substance so instructed the jury. Thus the testimony was relevant[3] and according to the general rule, admissible.

 Of course, there is always the danger that evidence of this character might create such undue prejudice in the minds of the jurors as to outweigh its probative value, but the determination of that problem must rest largely within the discretion of the trial judge who hears and sees the witnesses. Prior to the presentation of the disputed evidence to the jury, the court conferred privately at length with counsel for both parties and carefully defined the extent to which he would permit the officers to testify. For the most part these boundaries were observed. It is true that some of the details given by the first officer relating to the finding of a weapon hanging behind Hunt's door were irrelevant, but in view of the fact that the jury was already aware of Hunt's conviction for possession of an unregistered submachine gun, we cannot say that this was sufficient error to justify reversal.[4]

We hold, therefore, that the evidence in question was relevant, and that the trial judge did not abuse his discretion in allowing the jury to hear it.

Affirmed.

1. Campion v. Brooks Transp. Co., 1943, 77 U.S.App.D.C. 293, 135 F.2d 652; Sanford v. United States, 1938, 69 App. D.C. 44, 46, 98 F.2d 325, 327; Bill's Auto Rental v. Bonded Taxi Co., D.C.Mun.App. 1950, 72 A.2d 254, 258.

2. Petroleum Carrier Corporation v. Snyder, 5 Cir., 1947, 161 F.2d 323, 327; 1 Wigmore on Evidence, § 216 (3rd ed. 1940).

3. See, for example, Wood v. Davenport, 1954, 127 Cal.App.2d 247, 273 P.2d 564, 566–567.

4. Sanford v. United States, supra, 69 App. D.C. at page 46, 98 F.2d at page 327.