[Civ. No. 8295. Third Dist. Mar. 8, 1954.]

FRED D. WINCHELL et al., Appellants, v. JOHN LORENZEN, Respondent.

George E. Dilley, John R. Jacobson, College & Chinn for Appellants.

Geary, Spridgen & Moskovitz for Respondent.

SCHOTTKY, J.—Plaintiffs above-named, husband and wife, filed an action against defendant for personal injuries and property damage alleged to have been sustained by them in a collision between automobile operated by plaintiff husband and a truck operated by an employee of defendant. Defendant in his answer denied any negligence on the part of his employee, pleaded the contributory negligence of plaintiffs, and defendant also cross-complained against plaintiffs for damage to and loss of use of his truck. Thereafter plaintiffs filed a memorandum to set the case for trial and demanded a trial by jury.

The case was set for trial and thereafter, on October 25, 1951, plaintiffs gave notice of their intention to move to challenge the validity of the existing jury lists on the ground that the names contained in the lists were selected by the county board of supervisors, rather than by a majority of the superior court judges of the county as required by section 204 of the Code of Civil Procedure. This motion was heard and denied on November 2d, the trial court holding that the existing method of selecting the jury was legal and not subject to challenge.

The names of the jurors comprising the panel in the case were drawn on November 27th, the trial date having been set over to December 3d. The parties were represented by counsel at the drawing, Mr. Dilley appearing for plaintiffs and Mr. Achor for defendant. Before any names were drawn, the following colloquy occurred:

"THE COURT: Are you gentlemen ready to proceed with the drawing of a jury for Monday's case, *Winchell* vs. *Lorenzen*?

"MR. DILLEY: Yes, Your Honor.

"THE COURT: And, is Mr. Moskowitz here today, or are you ready to proceed, Mr. Achor?

"Mr. Achor: Yes, we are ready to proceed, Your Honor.

"The Court: Very well, you will draw a jury in the case of *Winchell* vs. *Lorenzen,* Madam Clerk.

"Mr. Dilley: We raise this motion in regard to the selection of the jury and I also want to point out, so that it will appear of record, so that if there is any significance to the date of the inception of the period when the new jury is to be selected by the Court rather than by the Supervisors. I understand that the date is sometime in November, set by the Legislature.

"The Court: No, the date which changes the method of selecting the jurors was September the 22nd, simply because that was the date that the new census became effective. There is nothing in the new law that says that the Judges cannot select the jurors at this time for the interim cases between now and the time of the new list, in other words, the matter of selection is up to the Judges and it doesn't say in what manner we shall select the jurors, it just says that the Judges shall select the jurors, therefore we have the old available list to do our selecting from and we felt that that would meet any challenges that were made in this matter. It will be a month or two or three before the new list is available.

"Mr. Dilley: By the statement in the record, the Court has exercised his discretion and has selected the list of names from this list?

"The Court: That is right.

"Mr. Dilley: That is something I didn't understand before.

"The Court: The basis of this is that it wouldn't make any difference in the method of selecting the jurors, and in other words, we are selecting now from the old list, which I think meets the objection——

"Mr. Dilley: ——I am inclined to agree with the Court on that.

"The Court: I can assure you that the new list is in the course of development.

"Mr. Dilley: I am concerned about a possible Plaintiff's verdict and then having the Defendant raise the question of the invalidity of this.

"The Court: If anything is raised about it, well, I am sure that the attorneys for the Defendants would waive it at the outset and you mentioned that matter and——

"Mr. Dilley: (Interrupting) Would you waive any objections to the jury at this time?

"Mr. Achor: Well, I don't know that there is any objec-

tions made to the jury and we take the position to take the jury as drawn as correct and I think perhaps that that is shown without requiring an express waiver, that is on the matter that we may have waived by our resisting your motion and taking the position that the list as now selected is valid.

"THE COURT: I think that is the rule, you see, if he resists your motion well——

"MR. DILLEY: (Interrupting) Thank you, Judge.

"THE COURT: (Continuing) And, I feel that there is no danger at all in this method. Now, you have perfected your record all the way through and the Court that there couldn't possibly be any advantage taken so the Clerk will draw forty-five names.

"MR. ACHOR: We will be happy to receive the list when it is filed.

"THE COURT: Very well, draw forty-five names."

The record does not show that plaintiffs made any further objections to the use of the jury list at the time of the drawing, or to the panel as drawn. The case came on for trial on December 3, 1951, with most of the prospective jurors in attendance. The court's minutes show that members of the jury panel were examined as to their qualifications by both parties, and that some of them were challenged for cause, while others were excused by peremptory challenge. Both plaintiffs and defendant eventually announced satisfaction with twelve of the prospective jurors, and the latter were thereupon sworn to try the cause. Counsel for the parties made opening statements and the trial proceeded. It does not appear from the record that plaintiffs objected to the panel or to the jury as finally constituted, either during the selection of the jury or later during the trial.

The trial was concluded on December 6, 1951, with the jury returning a verdict that plaintiffs take nothing by their complaint and that defendant take nothing by his cross-complaint. Following the entry of judgment plaintiffs made a motion for a new trial upon the ground of irregularity in the selection of a jury and also upon the ground of errors of law occurring at the trial. Plaintiffs did not include the insufficiency of the evidence as a ground for a new trial. The motion for a new trial was denied and plaintiffs have appealed from the judgment and from the order denying their motion for a new trial.

Appellants' first contention is that they were deprived of their right to a trial by jury. They argue that "the failure of the trial court to select a jury in accordance with law and imposing a jury selected by means not authorized by law upon plaintiffs and appellants was a denial of a trial by jury and is reversible error." They base this contention upon their construction of section 204 of the Code of Civil Procedure and refer to the jury list in the instant case as having been prepared by the board of supervisors and not by a majority of the superior judges as required by said section 204.

Section 204 of the Code of Civil Procedure, as it was in effect at the time of the trial in the instant case, and as it has been in effect for many years, provides:

"In the month of January in each year it shall be the duty of the superior court in each of the counties of this State to make an order designating the estimated number of grand jurors and also the number of trial jurors, that will, in the opinion of said court, be required for the transaction of the business of the court, and the trial of causes therein, during the ensuing year; . . . and immediately after said order designating the estimated number of trial jurors shall be made, the board of supervisors shall select, as provided in Sections 205 and 206 of this code, a list of men and women to serve as trial jurors in the superior court of said county during the ensuing year, or until a new list of jurors shall be provided.

"In counties and cities and counties having a population of 80,000 inhabitants or over, such selection shall be made by a majority of the judges of the superior court; . . . "

By the amendment of section 28020 of the Government Code at the 1951 session of the Legislature the population of Sonoma County was determined to be 103,405, and appellants contend that thereupon and thereafter no jury chosen from a list of names selected by the board of supervisors pursuant to an order of the superior court made in January could be a lawful jury.

We find no merit in this contention. It appears that in January, 1951, a list of trial jurors was selected by the board of supervisors and that this list was the list being used when Sonoma County was determined to be a county of more than 80,000 in population. The list of trial jurors for the year 1951 had been selected in the manner provided by law, and we believe this list was the legal and proper list until it either was exhausted or the time had come in January, 1952,

for the selection of a new list. We do not believe that the fact that Sonoma County, after the selection of the 1951 jury list in January, 1951, was determined to be a county of more than 80,000 in population canceled or invalidated the existing list of jurors. There is nothing in section 204 of the Code of Civil Procedure which either compels or justifies such a conclusion. Furthermore, we think it is clear from the colloquy hereinbefore quoted, between court and counsel at the time of the drawing of the venire for the jury in the instant case, that appellants acquiesced in the selection of the jury from the existing list. The court explained to counsel what had been done and counsel for plaintiffs replied that he did not understand it before, that he was inclined to agree with the court that the method of selection met the objection, and that he was concerned about a plaintiff's verdict and the possibility that defendant would raise the question of invalidity. He was assured by opposing counsel that the defense was satisfied with the selection. It is difficult to understand how appellants can reconcile their statements to the court when the jury was drawn and their failure to make any further objection to the jury or jury list until after the jury decided against them, with their position upon this appeal. If it was their intention to preserve and urge the contention that a jury from the list in question was not a lawful jury, in fairness to the court and opposing counsel they should have made such position clear. It is to be noted that appellants made no contention that the trial jurors were biased, prejudiced, incompetent or otherwise unfit to serve as jurors. Nor do they contend that the evidence is insufficient to support the verdict.

The remaining contention urged by appellants is that "The question asked of the plaintiff and appellant by the attorney for defendant and respondent concerning a traffic citation given plaintiff was prejudicial under the circumstances notwithstanding the admonition of the court to the jury to disregard the question and colloquy following it."

The alleged misconduct of respondent's counsel occurred during his examination of appellant Fred D. Winchell as an adverse party under section 2055 of the Code of Civil Procedure. The portion of the examination in question here is set out in the affidavit in support of the motion for new trial. It shows that after the witness admitted that he was able to drive his car and had driven it to Santa Rosa a few times since the accident, counsel then asked him: "Now, Mr.

Winchell, you have never entered a plea of guilty either guilty or not guilty to a citation which you received in this accident for the violation of Section 544 of the Vehicle Code?'' Appellants' counsel immediately remarked that the question was a proper ground for mistrial, to which the court replied: ''No, if he has entered a plea of guilty it might be pertinent.'' Respondent's counsel then attempted to explain why he thought the question was proper, but he was interrupted by appellants' counsel who said: ''I believe it is improper, particularly in the state of the record, of the two citations which are pending.'' The court then admonished the jury to disregard the colloquy between court and counsel and not to consider it in any way whatever, and then excused the jury while the propriety of the question was argued by counsel. Respondent's counsel pointed out that a plea of guilty would be admissible as an admission against interest and he admitted that the matter of the citation could not be gone into if a plea of not guilty had been entered. He offered to prove, however, that the witness had not entered any plea, and he argued that that in itself was an admission against interest—that it was the same as if the witness had stood silent when someone made an accusation against him in his presence. It appears that the citation was issued about 18 months before the trial. The trial judge ruled that the proffered testimony was inadmissible, but he cleared respondent's counsel of any charge of bad faith in the matter. The jury was recalled and the court again admonished the jurors to disregard the incident.

While it was no doubt improper for counsel for respondent to include in his question a statement that appellant husband had received a citation for violation of section 544 of the Vehicle Code, we believe that the admonition by the court to disregard the question prevented any prejudice to appellants, particularly where the instant action itself was concerned with the accident in controversy.

Reversal of a judgment on account of errors will not be ordered unless the entire record shows that such errors have resulted in a miscarriage of justice. (Const., art. VI, § 4½; *Hill* v. *Hill,* 82 Cal.App.2d 682, 696 [187 P.2d 28].) We do not have a transcript of the evidence in this case, and we cannot assume that the weight of the evidence was so evenly balanced that prejudice probably resulted. Appellants do not contend that the verdict is unsupported by the evi-

dence. For as stated in *Woods* v. *Pacific Greyhound Lines,* 91 Cal.App.2d 572 [205 P.2d 738], at page 574:

"We are of the opinion the motion for a new trial was properly denied. In the absence of a transcript of the testimony, we are unable to determine whether the alleged irregularities of procedure were prejudicial. (Const., art. VI, § 4½.) We may not presume they were prejudicial."

■ It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of an act of counsel and remove any effect his conduct or remarks would otherwise have. (*Tingley* v. *Times Mirror Co.,* 151 Cal. 1, 23 [89 P. 1097].) Moreover, the reference by appellants' counsel to two citations was equally improper. Appellants cited the alleged misconduct as one of the grounds for the motion for a new trial, as is shown by counsel's affidavit in support of the motion. The trial court denied the motion, and in doing this the court must be deemed to have concluded that no prejudice was suffered by appellants by reason of the alleged misconduct. (*Lafargue* v. *United Railroads,* 183 Cal. 720, 724 [192 P. 538].)

■ The trial judge is in a much better position than an appellate court to determine whether the verdict in a case is probably due wholly or in part to such misconduct, and the trial court's conclusion in the matter should not be disturbed unless, under all the circumstances appearing, it is plainly wrong. (*Lafargue* v. *United Railroads, supra,* at p. 724.) ■ The burden is on appellants to show that the misconduct complained of is sufficiently prejudicial to justify a reversal. (*Hill* v. *Hill, supra,* at p. 696.) This, appellants have failed to do.

The judgment and order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied March 31, 1954, and appellants' petition for a hearing by the Supreme Court was denied May 6, 1954.