[Civ. No. 23406.   Second Dist., Div. One.   June 5, 1959.]

HARRY C. AUGUSTUS, Respondent, v. AARON SHAF-FER, Appellant; CECIL COMPTON BEAN et al., Cross-defendants and Respondents.

Schell, Delamer & Loring, Fred B. Belanger and Earle K. Stanton for Appellant.

Francis J. Gabel and Spray, Gould & Bowers for Respondents.

LILLIE, J.—Plaintiff sued defendants for personal injuries arising out of a collision between a Hudson driven by defendant Shaffer and a Buick driven by defendant Bean. Shaffer filed a cross-complaint against Bean for property damage. The jury returned a verdict for $11,500 in favor of plaintiff against both defendants and against cross-complainant Shaffer in favor of cross-defendant Bean. Shaffer is the appellant herein. Bean does not appeal, acquiescing in the judgment in favor of plaintiff.

At the outset, it is conceded that no negligence could rightfully be imputed to plaintiff who was seated in his car at the corner awaiting a signal change. From the verdict it is obvious the jury believed that both defendants were negligent and the negligence of each was a concurrent proximate cause of plaintiff's injury. Appellant does not question the sufficiency of the evidence to support the jury's verdict, but contends that the trial court committed reversible error in denying his motion for mistrial for misconduct of counsel; admitting certain opinion evidence of a police officer; and giving instructions on the subject of future detriment or expense.

Although he predicates his first two contentions on the argument that the conflict in the evidence presented such a close question of liability that "in the light of the entire record" the jury would likely have accepted his theory that Bean was solely responsible for the accident had it not been for the trial court's errors, appellant fails to point out wherein the alleged "close question of liability" lies and of what it consists; or even set forth enough of the evidence to show the alleged conflict.

Since in the determination of prejudicial error, the test is whether the result would have been different had the alleged error not been committed (*Weaver* v. *Shell Oil Co.*, 34 Cal. App.2d 713 [94 P.2d 364]), it is necessary to consider all of the evidence relating to the cause of the accident. Far from the close question of liability contended by appellant, the record reveals a state of facts from which it would not have been reasonable for the jury to have found appellant Shaffer free from negligence or that his acts did not contribute proximately to the happening of the accident.

Defendant Bean testified he was driving his Buick northbound on Sepulveda intending to make a left turn west on Devonshire. As he approached the intersection he stopped in the crosswalk for the traffic light. When it turned green he slowly proceeded turning left between the islands separating the east from the west portion of Sepulveda. He had his foot on the brake but did not stop as his speed was so slow his speedometer was not registering, the car "dragging itself on idle." No other traffic was moving. Approximately three cars eastbound on Devonshire had stopped in the islandway between north and south traffic on Sepulveda. As he straightened out of his turn to go through the balance of the intersection, Bean observed that the traffic in the first two lanes near the island southbound on Sepulveda, filled five or six cars

back, was standing still. None had started into the intersection. The driver in the first car in lane Number 1, next to the island, motioned him through and the driver in the first car of lane Number 2 waited. Bean looked up the third lane near the curb and, finding it completely empty as far as he could see, looked back to the left and accelerated "pretty good" to get out of the intersection. He passed in front of the waiting traffic in lanes 1 and 2, and as he started to pass the third lane, appellant Shaffer drove into the intersection through the Number 3 lane, hitting him squarely on the right front tire, moving Bean's car into plaintiff's standing vehicle. Bean did not see Shaffer prior to the impact.

Plaintiff testified he was waiting headed east on Devonshire on the west side of Sepulveda. Bean was trying to turn left on Devonshire and as he entered the southbound portion of Sepulveda he increased his speed to between 20 and 25 miles per hour. The cars in lanes 1 and 2, southbound on Sepulveda, were standing still. Appellant Shaffer, southbound in lane Number 3, drove into the intersection past the standing cars in the first and second lanes. Plaintiff heard the screech of brakes and saw Shaffer turn slightly to the left, striking Bean's car, the impact throwing it into his.

Robert H. Smith testified he was behind Bean, northbound on Sepulveda. As Bean proceeded into the intersection and turned left, he was moving "rather slowly," about four or five miles per hour. No cars entered or passed through the intersection, the first and second lane of southbound traffic remaining stationary. Upon making his turn, he forged ahead "rather rapidly." Smith saw appellant come into the intersection from the third lane next to the curb driving 30 to 35 miles per hour but did not see him slow down as he approached, although at the last minute he swerved.

Appellant Shaffer testified he was traveling between 25 and 30 miles per hour in lane Number 3 near the curb. Although aware of the cars in lanes 1 and 2, he did not know if they were moving or standing. Lane 3 was clear for 160 feet and no other car entered the intersection before him. Throughout his travel into the intersection he was looking at the traffic light, driving approximately 25 miles per hour. There appears to be a conflict in his testimony as to when he first saw Bean, but it is clear that when he did it was too late to avoid the accident. In his statement to the police officer, Shaffer said he was going 20 to 25 miles per hour and that he did not see Bean "at all."

The police officer testified he measured 12 feet of skidmarks from the front wheel of Shaffer's car to the point of impact. The evidence also shows that Bean was already through the intersection and into that portion of Sepulveda for southbound traffic a distance of 28 feet before he was struck by appellant.

From the record before us, the jury could have hardly drawn any other conclusion than that appellant was negligent in driving down an open lane past two full lanes of standing vehicles, into an intersection obscured to him by solid traffic on his left, without slowing down, without taking his eyes from the traffic light and paying attention to the intersection before him, and without keeping his vehicle under such control that he could stop in sufficient time to avoid a collision. We perceive neither a close question of liability, nor how a reasonable jury could have exonerated appellant from negligence or found the proximate cause of the accident the exclusive conduct of defendant Bean. We cannot agree that the state of the evidence is such that the alleged procedural errors were responsible for the jury's finding that appellant was liable with Bean.

As to the alleged misconduct of Mr. Gabel, counsel for plaintiff, and Mr. Bradish for defendant Bean, the record discloses that one Reiter was the driver of the first automobile in lane Number 1, which remained stationary to permit Bean to go through the intersection.

In his opening statement, Mr. Bradish told the jury that "one of the witnesses to the accident, a Mr. Reader (sic) who was in one of the stopped southbound cars, had passed away and is not available." Thereafter, no further mention of Reiter occurred until on cross-examination of Officer Slattery, Mr. Bradish, without objection, asked if he talked to Reiter. Slattery replied in the affirmative. At this point, a recess was taken, and in chambers a discussion occurred among Mr. Bradish, appellant's counsel, and the trial judge, wherein appellant's counsel objected to any question Mr. Bradish might ask the officer concerning what Reiter told him. Mr. Bradish said he did not intend to ask him the contents of the statement. The judge told Mr. Bradish to "let it stand at that . . . you can't go into the statement." Appellant's counsel then offered to stipulate with Mr. Bradish that Reiter is dead, which offer the record fails to disclose was accepted. Resuming cross-examination in open court, Mr. Bradish, without objection, again asked the officer whether he talked to Reiter at the

scene and took a statement from him, and upon an affirmative answer, pursued the subject no further.

Mr. Gabel on cross-examination of the officer asked: "This witness right here that you talked to was here in number one lane at the crosswalk and stopped, wasn't he?" Appellant objected and, having in mind the stipulation offered by appellant's counsel in chambers, Mr. Gabel asked both counsel to stipulate that if his process server were called "he would testify that Mr. Reiter is dead." However, appellant's counsel stated he would not do so, but would stipulate "that each of the *three* parties . . . attempted to subpoena a Mr. Reiter, that each of the *three* parties to this action were advised by their respective process servers that Mr. Reiter is dead," which offer was accepted. Then Mr. Gabel said "If I do not go too far, gentlemen, I have ascertained that there was no adult in the car with Mr. Reiter, only his small son. There was no other member of his family to be brought in. In view of that, will you stipulate that he may read to us the statement and report of Mr. Reiter?" Mr. Bradish agreed, whereupon the trial court said, "All right. Any objection?" to which appellant's counsel replied, "Yes, your Honor, objected to as hearsay," which objection was sustained. Mr. Gabel said he had no further questions. Appellant's counsel asked permission to approach the bench and at the court's suggestion they went into chambers. There he moved for a mistrial "on the ground of prejudicial misconduct of counsel for the plaintiff." After listening to considerable argument, the trial judge said he could see no prejudice, felt there had been none under the circumstances, and denied the motion.

Appellant, having made his motion on the ground of misconduct of plaintiff's counsel, apparently felt that Mr. Bradish did nothing improper. Indeed, the record does not disclose that he did—in fact from all it reveals the inference that Mr. Bradish, not having asked for the content of the statement or indicated his interest in it, was not anxious to have the jury know it was a reasonable one. However, appellant now charges both counsel with acting in concert and in bad faith "to make defendant Shaffer the 'goat' . . ., (O)bviously done to hinder, not to aid the administration of justice," an accusation entirely unfounded and unjustified.

Whether Mr. Gabel's conduct in asking for the stipulation was improper must be considered in the light of what previously transpired. A jury instruction submitted by appellant was given by the court to the effect that if a party could pro-

duce stronger and more satisfactory evidence on a point but did not do so, the weaker evidence should be viewed with distrust. Defendant Bean's deposition had previously been taken and it is apparent from the record that all parties knew what it contained and that it was to be offered as his testimony at the trial. Therein, Bean stated that he accelerated in front of southbound traffic on Sepulveda only after a ''gentleman in the car next to the island motioned me on through,'' giving him the right of way, which was respected by the driver of the first car in the second lane. In view of this and other testimony, unless an explanation was forthcoming as to why Bean did not call Reiter to corroborate his story, the jury, in accord with the instruction, could well have inferred that Bean's story was not true and Reiter would have testified to the contrary had he been called. Under these circumstances, Bean's lawyer had some obligation to explain Reiter's absence or otherwise submit to the unfavorable inference. The importance of this is further borne out by the fact that appellant testified that he did not know if the two lanes he passed were standing or moving; and in the statement Bean gave the officer he failed to mention that anyone in the first two lanes had motioned him through the intersection.

Since plaintiff was suing both Bean and Shaffer, plaintiff and defendant Bean were adverse parties. Bean's counsel not having indicated he wanted the jury to know Reiter's statement, any showing that plaintiff also wanted to explain why he was not calling Reiter and have the statement read, would reasonably justify the inference that Reiter's statement to the officer had not borne out Bean's claim that he was waved through the intersection by standing southbound traffic.

It was appellant who called the officer and questioned him concerning his investigation, the statements taken, and the point of impact. Counsel for the other parties had the right to cross-examine him relative to these matters. In chambers, appellant's counsel had already said to Mr. Bradish: ''I will stipulate, as Mr. Gabel will, I am sure, that Mr. Reiter is dead.'' With this in mind, Mr. Gabel asked him before the jury to stipulate that if his process server were called, he would testify Reiter is dead. Refusing to do so, appellant's counsel in lieu thereof offered his own carefully worded stipulation that *each* of the parties attempted to subpoena Reiter and *each* was advised he was dead, making it obvious that appellant's counsel intended to, and actually did, create the impression that he also wanted Reiter as a witness, had tried

to subpoena him and would have used him had he been available. It was in this climate that Mr. Gabel asked for the stipulation that Mr. Reiter's statement to the police officer be read.

Although we agree that it is generally not the best trial practice, and often error, to ask for a stipulation before a jury, under the circumstances at bar we find the conduct of Mr. Gabel neither sufficient to constitute error, nor resulting in prejudice to appellant; nor do we believe it created an "unfavorable atmosphere" contended by appellant. No discussion indicating that appellant's counsel was unwilling to have the jury know the contents of the statement because it might not have been favorable to appellant occurred before the jury. At most, it knew only that he had made the familiar legal objection of "hearsay." This ended the matter and Mr. Gabel dropped the subject. For all the jury knew, Mr. Reiter's statement was as favorable to appellant Shaffer as to plaintiff or defendant Bean.

Upon denial of appellant's motion for mistrial, no request was made to admonish the jury concerning the matter, or for any special cautionary instruction. Actually given was one instructing it not to consider as evidence any statement of counsel, or conjecture the answer to a question to which an objection was sustained, or assume or speculate to be true any insinuation suggested by a question put to a witness by examining counsel or by the court.

Counsel has cited numerous cases all presenting wholly unrelated factual situations, but generally holding that utmost care must be taken by the trial judge and counsel to avoid any conduct calculated to prejudice jurors. We find nothing in the authorities cited to justify a reversal of the instant judgment.

Commenting briefly on appellant's argument that counsel's conduct "is clearly an attempt 'to create an atmosphere before the jury' " designed to prejudice the appellant, we find from the record the existence of no such atmosphere, nor did the trial judge, for in denying the motion for mistrial he stated he found no prejudice. He is in a far better position than we to determine from all of the circumstances, having heard counsel and observed their conduct, whether prejudice resulted. (*LaFargue* v. *United Railroads*, 183 Cal. 720 [192 P. 538]; *Wills* v. *J. J. Newberry Co.*, 43 Cal.App.2d 595 [111 P.2d 346].) Appellant has failed to sustain the burden of showing that the conduct complained of was sufficiently preju-

dicial to justify a reversal (*Hill* v. *Hill*, 82 Cal.App.2d 682 [187 P.2d 28]), or that such alleged errors have resulted in a miscarriage of justice (*Winchell* v. *Lorenzen*, 123 Cal.App. 2d 704 [267 P.2d 398]; Const., art. VI, § 4½).

■ We likewise find the contention that the trial court committed reversible error in admitting certain testimony of a police officer, to be without merit.

Appellant called as his witness one Slattery, who for 11 years had been a police officer, and for 9 a specialist in accident investigation. Having made a complete investigation at the scene, he was thoroughly examined concerning skidmarks, the point of impact, measurements, and damage. Appellant's counsel asked him if he knew the speed limit for southbound traffic at the location of the accident, to which he answered, "Yes"; then, what it was, to which an objection was sustained. Upon further questioning by counsel for appellant, he testified that for southbound travel on the westerly portion of Sepulveda, 45-mile speed limit was posted a quarter of a mile north of the intersection.

On cross-examination Mr. Bradish asked him where in his report it was indicated that the 45-mile zone was posted, whereupon the officer located it in the first box thereof entitled "Prima Facie Speed: 45." Mr. Bradish then said "but, that box does not say anything about the posted speed limit there, does it?" To which he answered, "this page (4.2) called for my opinion of the accident and my findings," based "on the posting of the street at that time." Then questions were asked concerning whether he saw the posting and if it actually was there. The following thereafter occurred:

"Q. (By Mr. Bradish) Now, if you will just drop one box from where it says, 'speed factor,' you have indicated that the basic speed was 25 miles per hour, haven't you?"

Appellant objected on the ground the 4.2 form was based on his opinion. The objection was overruled and the officer testified:

"I arrived at that from the—oh, the nature of the damage, the length of skidmarks—no, the basic speed is my own opinion as to what I thought it should have been for these particular cars at this particular time."

Then Mr. Bradish asked:

"At this particular time under the conditions that prevail at this time, is that right?" and the officer answered: "That's right."

Appellant moved to strike the last two answers on the

ground that they were based upon the opinion and conclusion of the witness, and then asked the court that the matter be heard in chambers. Mr. Bradish, in response thereto, said ''Well, counsel's reasons for his objections are made in the presence of the jury. I think I have a right to urge this court to overrule the objection in the presence of the jury. I don't like this business of having him sound off and then ask to go into chambers when I have something to say.'' With very little further discussion, the motion was denied and another subject was pursued.

Appellant argues that the court erred in denying the motion to strike and permitting a discussion of the matter in the presence of the jury. Since we perceive no resulting prejudice to appellant, we refrain from discussing the propriety of the court's ruling.

It cannot be denied that it was appellant's speed that was in the mind of all parties at the time the officer was questioned. The purport of the officer's testimony is that 25 miles per hour was what he thought should have been the basic speed for ''these particular cars'' ''under the conditions that (then) prevailed.'' He, in effect, stated to the jury that 25 miles per hour was a safe and proper speed for the vehicles involved. Appellant himself testified he was going 25 miles per hour as he entered the intersection. To the police officer, immediately after the accident, he stated he was going south on Sepulveda at about 20 to 25 miles per hour.

Obviously, the officer's opinion that 25 miles per hour was a safe speed at that intersection was testimony favorable to appellant, could not have been prejudicial to him, and constitutes no ground for reversal (*Downey* v. *Bay Cities Transit Co.*, 94 Cal.App.2d 373 [210 P.2d 713] ; *Driskill* v. *Thompson,* 141 Cal.App.2d 479 [296 P.2d 834] ).

The contention that the trial court erred in giving instructions on the subject of recovery of damages for future detriment and expense for treatment is answered by the testimony of plaintiff and his doctor. Plaintiff testified he is still under the care of Dr. Raney, uses diathermy and traction for his neck, and presently suffers from headaches, pain in the cervical area up and down the spine and in his arms, causing his hands to shake. Dr. Raney was asked if plaintiff ''has continued'' to need treatment, and he answered: ''Yes, he is going to need treatment, mainly in the form of physiotherapy.'' Questioned concerning future treatment and care the doctor mentioned physiotherapy and the use of an infra-red

lamp which should be applied on his back to relieve muscular spasms. He further testified that, although physiotherapy will probably improve his condition, it would not make him well because the treatment only helps the spasm, the trouble still remaining; and that each time he subjects himself to stress or strain he will have difficulty which he may be able to help with physiotherapy.

This does not seem to leave the matter of future treatment to speculation, either as to plaintiff's physical condition or the treatment and care which will be needed. It is clear from the record that plaintiff has not fully recovered and will continue to need treatment. The instruction given relative to the reasonable value of physicians' and surgeons' charges for services ''reasonably certain to be required and to be given in his future treatment,'' and the reasonable value of services of nurses and attendants ''reasonably certain to be required and to be given in his future treatment, if any,'' clearly advises the jury that plaintiff is entitled to an amount for future treatment *only* if it finds from the evidence it is reasonably certain to be required and given. In addition, in a separate instruction the court advised the jury that it was not permitted to award plaintiff speculative damages.

Although we have no way of determining whether the jury took into account future detriment and treatment in arriving at its verdict, there is nevertheless ample evidence in the record to justify the giving of an instruction covering these elements of damage. Under the instructions given, the jury was free to determine *if* any detriment was certain to result in the future (Civ. Code, § 3283) and if it did not so find from the evidence, it was its responsibility to disregard the instructions. We conclude that neither the giving of the instruction was error, nor that it could have prejudiced appellant or resulted in a miscarriage of justice.

For the foregoing reasons, the judgment is affirmed.

White, P. J., and Fourt, J., concurred.