[Civ. No. 24692. Second Dist., Div. One. Dec. 19, 1960.]

RICHARD M. LERNER et al., Respondents, v. IRVING B. GLICKFELD et al., Appellants.

Hyman Goldstein and Ellis J. Horvitz for Appellants.

Harold A. Fendler and Don Lowry for Respondents.

FOURT, J.—This is an appeal from a "judgment on verdict in open court" in an action for malicious prosecution. The initial action which was the foundation for the subsequent malicious prosecution action had to do with the purchase and sale of certain real property. In the present action, wherein defendants were charged with malicious prosecution, judgment was entered in favor of plaintiffs Richard and Beulah Lerner in the sum of $17,000 compensatory damages and $2,000 exemplary damages, and in favor of plaintiffs Thomas and Margaret MacLeod in the sum of $8,000 compensatory damages and $2,000 exemplary damages.

The appellants admit the sufficiency of the evidence to support the verdict, "except as to damages."

A résumé of some of the facts is as follows:

On March 15, 1954, Richard M. Lerner and Beulah C. Lerner (hereinafter referred to as the "Lerners") and defendants entered into a written agreement designated "deposit receipt," by the terms of which the Lerners agreed to sell to defendants certain described property for the sum of $28,000. On March 16th, the parties executed written escrow instructions by the

terms of which defendants agreed to assume an encumbrance of $18,000 and to deposit in escrow $10,000 in cash *prior* to June 15, 1954, for the purchase of Lot 89 of Tract 11433 in the city of Los Angeles, as per map recorded in Book 205, pages 20-25 of maps in the office of the recorder of said county. Neither the deposit receipt nor the escrow instructions contained any reference to any condition relating to a swimming pool or a 6-foot wall. In fact, the deposit receipt stated among other things, "This writing expresses the entire contract between the parties and there are no other representations or understandings, oral or written, which alter its terms in any manner."

Subsequently, defendant Irving Glickfeld, an attorney at law, maintained that the entire transaction was predicated upon an alleged oral representation that a certain sized swimming pool could be placed upon the property. The Glickfelds demanded a reduction in the purchase price, but the parties were unable to reach an agreement. Numerous charges and countercharges were made.

In early June, the Lerners' attorney contacted Glickfeld and suggested putting the house up for other offers to see if someone else might make an offer to purchase the house before the close of escrow on June 14th. Glickfeld stated that he had no objection to so doing.

On June 11th, Lerners' attorney again contacted Glickfeld and advised him that there was a potential buyer interested in the property and on June 14th, the Glickfelds were informed that the Lerners had received a bona fide offer to purchase the property for $28,000. Glickfeld said he would not consent to any sale of the property to anyone else.

On June 15th defendants, Glickfeld, filed the prior action against the Lerners for "specific performance *and* damages." Therein, Glickfeld alleged that the Lerners had made oral representations concerning the size of the property to be conveyed and also had stated that there was sufficient room for a 20 by 40-foot swimming pool, in order to induce the Glickfelds to enter into the written agreement of March 16th.

On June 18, 1954, the Glickfelds filed an amended complaint in the prior action joining the MacLeods as parties defendant. It was alleged therein that the MacLeods were not bona fide purchasers and had knowledge of Glickfelds' rights in and to said property. The same allegations as to the MacLeods were repeated in the second and third amended complaints in the prior action. In Glickfelds' fourth, fifth and sixth amended

complaints in the prior action it was alleged that the MacLeods were not purchasers in good faith and for value, and that they knew when the conveyance to them was made that an incomplete escrow existed with reference to the sale by the Lerners to the Glickfelds.

The Glickfelds did not file their action against the Lerners until after the Lerners had signed their contract to sell to the MacLeods and had recorded the deed to the property. The Lerners' attorney had informed the MacLeods that the escrow had expired and the owners (Lerners) could sell the property to anybody they desired. The MacLeods were not advised that the Glickfelds had threatened to file an action or that they might become involved in litigation when they entered into the contract of sale.

At the time the MacLeods agreed to buy the Lerners' property, they were in another escrow themselves and were required to vacate their own house no later than July 1, 1954. They wanted immediate possession and title to the end that prior to July 1st they could make improvements in the Lerner house, and as soon as the deed was recorded on June 15th, they did begin extensive improvements. Glickfeld knew at all times prior to June 15th that he could purchase the Lerner property by paying the balance of $9,500 cash into the escrow, as required by the escrow contract. Notwithstanding this knowledge and his continually expressed unwillingness to do this or to pay $28,000 for the Lerner property, Glickfeld repeatedly alleged in his various complaints that he and his wife ''were and always have been and still are ready and willing to perform the agreement on their part to be performed.''

As a result of the filing and prosecution of the prior action by the Glickfelds, both the MacLeods and the Lerners sustained substantial damages.

The jury returned a verdict in favor of both sets of plaintiffs (i.e., MacLeods and Lerners), and the Glickfelds moved for a new trial. The motion for the new trial was denied and the Glickfelds appealed from the judgment.

On appeal, the Glickfelds raise three issues: first, that certain instructions on ''probable cause'' were prejudicially erroneous; secondly, that the damages awarded were excessive; and finally, that counsel for the Lerners was guilty of prejudicial misconduct.

Appellants assert that ''Plaintiffs Lerners' Instruction 3[1] Was Prejudicially Erroneous''; that ''Plaintiffs MacLeods' Instruction 3-A[2] Was Prejudicially Erroneous''; that ''The

[1]PLAINTIFFS LERNERS' REQUESTED INSTRUCTION No. 3:

''In determining the existence of the second essential element in plaintiffs' Lerner case—whether or not defendants Glickfeld had or did not have probable cause to bring their prior action against the Lerners—you are instructed that in order to find that a lack of probable cause existed, you must find from the evidence either that the defendants Glickfeld did not believe, or that the defendants Glickfeld did not have reasonable grounds for believing, the allegations of their verified complaints in the prior action to be true, to wit:

''1. The verified allegations made by the Glickfelds in their prior action; that escrow instructions signed by the plaintiffs Lerner and defendants Glickfeld with Escrow Guarantee Co. on or about March 16, 1954, relating to the purchase of Lot 89 of Tract 11433, for the aggregate sum of $28,000 provided, among other things, that the Glickfelds should deposit with said Escrow Guarantee Co. the sum of $9,500 'on or before June 15, 1954,' and that the Glickfelds were 'not in default under the terms of . . . said escrow instructions and their time for performance had not expired' on June 15, 1954, when the Lerners conveyed said property to the MacLeods.

''2. The verified allegations . . . that they 'were and always had been . . . ready and willing to perform the agreement on their part to be performed' including the deposit of $9,500 in the Escrow Guarantee Co. as provided in their said escrow contract.

''3. The verified allegations . . . that their failure to make the deposit of $9,500, . . . in accordance with the escrow instructions, was excused because the Lerners had conveyed said real property to the MacLeods on June 15, 1954, and because the Lerners had failed to deposit either a deed or a termite report with said Escrow Guarantee Co. on or before June 15, 1954.

''4. The verified allegations . . . that they had sustained damages in the sum of $8,000 by reason of the conveyance of said real property by the Lerners to the MacLeods *because the real property had increased in value from $28,000 on March 16, 1954 to $36,000 on June 15, 1954.* (Emphasis added.)

''In deciding the issue of lack of probable cause, you should first consider whether the defendants Glickfeld did in fact actually and honestly believe the foregoing allegations of their complaints to be true. In the event you find that they did not actually or honestly believe said allegations to be true, then they did not have probable cause for instituting the prior lawsuit.

''In the event that you find that the defendants Glickfeld did actually and honestly believe the foregoing allegations of their complaints to be true, then you must decide whether such belief on their part was founded upon circumstances sufficiently strong to warrant a reasonably prudent person in believing said allegations to be true. If the circumstances were not sufficiently strong to warrant an ordinarily prudent person in believing the said allegations to be true, then the defendants Glickfeld did not have probable cause for instituting the prior lawsuit, even though they actually believed their allegations to be true, and plaintiffs will have established the second element necessary to their cause of action.''

[2]PLAINTIFFS MACLEODS' REQUESTED INSTRUCTION No. 3-A:

''In determining whether or not defendants Glickfeld had or did not have probable cause to include Mr. and Mrs. MacLeod in their prior action, you are instructed that if the defendants Glickfeld did not have probable cause to institute the action against the Lerners, then as a

Prejudicial Effects of Instruction 3 and 3-A Were Compounded by Plaintiffs Lerners' Instruction No. 5 'B'[3]''; and finally, that "It Was Error to Instruct the Jury That Knowledge by Defendants of Facts Showing Want of Probable Cause Relates to the Time of the 'Filing of the Original Complaint or any Amended Complaint in the Prior Action.[4]' "

■ Appellants assert that "PLAINTIFFS' LERNER REQUESTED INSTRUCTION No. 3" (footnote No. 1) required the jury to find lack of probable cause as a matter of law if the jury found that appellants did not believe or have reasonable ground to believe "each and every allegation set forth in the instruction, including the allegation as to the *amount of damages.*" (Emphasis added.)

■ In order to have probable cause, a reasonable belief in the validity of the claim asserted is required. (*Albertson* v. *Raboff,* 46 Cal.2d 375, 382 [295 P.2d 405].)

■ The record discloses that appellants' contention is without merit. In the prior action appellants alleged in

matter of law they did not have probable cause to include the MacLeods in said action.

"In the event that you find, however, that the defendants Glickfeld did have probable cause to institute the prior action against the Lerners, you must nonetheless determine whether the defendants Glickfeld had or did not have probable cause to include the MacLeods in said action.

"On this issue, in order to find that a lack of probable cause existed, you must find from the evidence either that the defendants Glickfeld did not believe, or that they did not have reasonable grounds for believing the allegations of their Amended Complaint in the prior action to be true, to wit:

"*That the MacLeods were not bona fide purchasers and had knowledge of the Glickfelds' rights in and to the property here involved and had entered into an arrangement, concert, contract and conspiracy with the Lerners to thwart the rights of the Glickfelds in and to said property.*" (Emphasis added.)

". . . . . . . . ."

[3]PLAINTIFFS' (LERNERS) REQUESTED INSTRUCTION 5 'B':

"Defendants cannot escape liability for the malicious prosecution of unjustified charges or causes of action by joining with the same, or combining in the same action or complaint, proper and justified charges or causes of action. In this connection, the plaintiffs do not have the burden of proving that damages sustained by them are specifically attributable to the malicious prosecution of the unjustified charges as distinguished from the concurrent prosecution in the same action of charges which were not malicious or for which defendants had probable cause."

[4]DEFENDANTS' REQUESTED JURY INSTRUCTION No. *8:*

"The knowledge of facts by defendants which may show want of probable cause or malice is that which is possessed at the time of the *filing of the original complaint or any amended complaint in the prior action,* and not that which is subsequently acquired." (Italicized portion was trial court's modification to defendant's instruction.)

their verified amended, second amended and third amended complaints that the value of the real property *was at all times* from March 16, 1954, to June 15, 1954, the sum of $36,000. After demurrers had been sustained to the above complaints, the appellants thereupon filed their fourth and fifth amended complaints alleging that the value of the property on June 15, 1954 was $36,000, and that they had sustained damages of $8,000. Demurrers having been sustained to the afore-mentioned fourth and fifth amended complaints, appellants in their sixth amended complaint alleged that their previous allegations about the property's being worth $36,000 on March 16, 1954, and at all times thereafter until June 15, 1954, were "inadvertent and incorrect" and that the real property had *increased in value* from $28,000 on March 16th to $36,000 on June 15th, and "plaintiffs (i.e., appellants) intended said allegations to refer only to the time of performance, to wit, June 15, 1954."

That portion of the aforementioned instruction with ref-erence to damages is by its very terms expressly and solely related to appellants' claim of damages that the real property had *increased in value* some $8,000 when in fact they knew and had alleged (not on information and belief) in verified pleadings previously filed in the prior action that the value of the property was exactly the same and had not increased in value during the three-month period in question.

Appellants were asserting a claim for some $8,000 and the jury was properly instructed on the question of whether appellants had probable cause for asserting such a claim. (*Albertson* v. *Raboff, supra,* 46 Cal.2d 375, 382.) Under the facts of this case the instruction given was correct and taken in connection with the other instructions given on the ques-tion of probable cause,[5] it is clear that the jury was not mis-led into returning a verdict upon erroneous principles of law.

---

[5]DEFENDANTS' REQUESTED JURY INSTRUCTION No. *9:*
"Proof of want of probable cause is not sufficient to justify a verdict for malicious prosecution. It is also necessary to prove malice, as defined herein."
DEFENDANTS' REQUESTED JURY INSTRUCTION No. *3:*
"Want of probable cause must be proved by plaintiff(s) and cannot be inferred from proof of malice."
DEFENDANTS' REQUESTED JURY INSTRUCTION No. *4:*
"The mere fact that the Court gave judgment to the defendants in the prior case is not sufficient evidence of want of probable cause."
DEFENDANTS' REQUESTED JURY INSTRUCTION No. *13:*
"Probable cause for the institution of an action does not mean legal cause therefor, but only an honest belief on the part of the person com-

 Instructions must be read and considered as a whole. (*Lindenbaum* v. *Barbour*, 213 Cal. 277, 286 [2 P.2d 161]; *Douglas* v. *Southern Pacific Co.*, 203 Cal. 390, 396 [264 P. 237]; *Domjanov* v. *Pacific Electric Railway Co.*, 66 Cal.App. 2d 928, 933 [153 P.2d 382]; *Barsha* v. *Metro-Goldwyn-Mayer*, 32 Cal.App.2d 556, 565 [90 P.2d 371]; *Rupp* v. *Summerfield*, 161 Cal.App.2d 657 [326 P.2d 912].) The construction of an instruction which supports the judgment rather than the contrary will be adopted if the instruction is reasonably susceptible of such interpretation. (*Rupp* v. *Summerfield*, *supra*, p. 667; *Smith* v. *Southern Pacific Co.*, 138 Cal.App.2d 459 [292 P.2d 66].)

 Appellants' assertion that Instruction 3-A (footnote No. 2) was prejudicially erroneous is also without merit. In their duly verified amended complaint, appellants alleged (not on information and belief): ''That the MacLeods were not bona fide purchasers and had knowledge of the Glick-felds' rights in and to the property here involved and had entered into an arrangement, concert, contract and con-spiracy with the Lerners to thwart the rights of the Glickfelds in and to said property.''

The filing of the amended complaint by the appellants constituted the institution of the prior action as against the MacLeods, who were not named as parties in the original complaint. The trial court in its instruction merely directed the attention of the jury to the verified allegations which

---

mencing the action, founded upon facts sufficiently strong to warrant a reasonable man in believing that such action is proper.''

DEFENDANTS' REQUESTED JURY INSTRUCTION NO. *1:*

''Probable cause has reference to the common standard of human judgment and conduct and malice refers to the mind and judgment of the defendants in the particular acts charged as malicious prosecution. Malice need not indicate anger or vindictiveness, but it imports bad faith in a malicious prosecution, or the want of sincere and reasonable belief that the facts and circumstances justify the institution of the action.''

DEFENDANTS' REQUESTED JURY INSTRUCTION NO. *12:*

''*One who sincerely believes upon reasonable grounds that a civil wrong has been committed may institute appropriate legal proceedings without danger of legal liability in an action for malicious prosecution even though the proceedings he initiated may have been terminated against him provided that a reasonably prudent man would have so acted under the same circumstances.*'' (Emphasis added.)

DEFENDANTS' REQUESTED JURY INSTRUCTION NO. *8:*

''The knowledge of facts by defendants which may show want of probable cause or malice is that which is possessed at the time of the *filing of the original complaint or any amended complaint in the prior action,* and not that which is subsequently acquired.'' (Emphasis is portion modified by trial court.)

the defendants (appellants) themselves made against the MacLeods in instituting that part of the action which first made the MacLeods parties to the lawsuit.

█ Appellants assert that the aforementioned allegations do not appear in the fourth, fifth or sixth amended complaints; that all that appears in the sixth amended complaint, is the statement that the MacLeods were not purchasers in good faith and for value and that title in them was created by defendants Lerner subsequent to defendants Lerners' obligation to convey title to appellants. Appellants further stated that "the allegations of 'an arrangement, concert, contract and conspiracy' between the Lerners and MacLeods were unnecessary to the complaint, and the Appellants might nevertheless have maintained a valid cause of action against the MacLeods without proving a conspiracy and without having probable cause to believe any conspiracy existed."

The contention does not alter the fact that the charging allegations were verified and positive, required answering, raised substantial legal issues, and caused the plaintiffs additional worry and anxiety. The appellants cannot now assert that the allegations were of no importance and should have been totally disregarded, either as an element to be considered by the jury or otherwise.

Appellants assert that the holding in *Vargas* v. *Giacosa,* 121 Cal.App.2d 521 [263 P.2d 840] is controlling in the case at bar. The Vargas case is clearly distinguishable from the instant case. In Vargas, the court instructed the jury that if they found no rent was due on a particular day, lack of probable cause was established as a matter of law. In reversing the trial court, the District Court of Appeal properly pointed out that there were other grounds for the unlawful detainer action, which necessarily should have been included in the instruction.

In the case at bar, no necessary element was omitted from the instructions. Instruction 3-A refers solely to the charging allegations of the defendants Glickfeld in their verified amended complaint in instituting the action against the MacLeods.

Appellants' attack on Instruction Number 5 "B" (footnote 3) is specious. █ The instruction is in accordance with what was said in *Albertson* v. *Raboff,* 46 Cal.2d 375 [295 P.2d 405] wherein the Supreme Court, speaking through Mr. Justice Traynor, stated at page 385:

". . . In *Singleton* v. *Perry*, 45 Cal.2d 489, 497 [289 P.2d 794], we held that a defendant cannot escape liability for the malicious prosecution of an unjustified charge by joining with it a justified charge, and that in such a case, the plaintiff does not have the burden of 'showing that her damage was specifically attributable to the malicious prosecution as opposed to the prosecution which . . . was not malicious.' "

Finally, appellants assert that Instruction Number 8 (i.e., defendants' instruction which was modified by the trial court and which is set forth in footnote No. 5) is erroneous in that knowledge by defendants of facts showing want of probable cause should relate only to the time of the filing of the original complaint and should not apply to any of the amended complaints in the prior action. The instruction as given provides:

"The knowledge of facts by defendants which may show want of probable cause or malice is that which is possessed at the time of the *filing of the original complaint or any amended complaint in the prior action,* and not that which is subsequently acquired." (Emphasis added by trial court as modification.)

We believe that the instruction as given correctly states the law. The general principle is that an amended complaint supersedes the original. (*O'Melia* v. *Adkins,* 73 Cal. App.2d 143, 147 [166 P.2d 298].) Although the amended complaint supersedes the original as a subsisting pleading, the amended complaint does not obliterate the original complaint nor wholly nullify the fact of its filing or its contents (i.e., the time of filing the original is still the date of commencement of the action for purposes of the statute of limitations (*Jones* v. *Wilton,* 10 Cal.2d 493 [75 P.2d 593]), and the five-year period for mandatory dismissal under Code of Civil Procedure, section 583, runs from the time of filing the original). (*Douglas* v. *Superior Court,* 94 Cal.App.2d 395, 398 [210 P.2d 853].) We believe the rule to be that knowledge acquired *subsequent* to the pleading or pleadings is immaterial on the issue of probable cause, but knowledge at the time of the pleading or pleadings is material on the issue of probable cause. Appellant has cited no authority to the contrary which would compel this court to reach a different conclusion.

Respondents MacLeod were not parties at the time of the filing of the original complaint. They were made defendants (in the prior action) in the amended complaint.

Appellants claim that the damages awarded by the jury

were "excessive in amount and wholly unsupported by the evidence."

In cases of malicious prosecution it is settled that damages for such tort " 'may include loss of time and liberty, injury to reputation, if any, mental suffering, as well as for bodily harm, if any.' " (*Singleton* v. *Perry*, 45 Cal.2d 489, 495 [289 P.2d 794] quoting from *Ray Wong* v. *Earle C. Anthony, Inc.*, 199 Cal. 15, 18 [247 P. 894].)

Every presumption upon appeal favors the correctness of the jury's verdict which is given added support by the ruling of the trial court denying defendants' motion for new trial. (*Singleton* v. *Singleton*, 68 Cal.App.2d 681, 704 [157 P.2d 886]; *Green* v. *Stewart*, 106 Cal.App. 518, 531-532 [289 P. 940].) The rule is stated in *Singleton* v. *Singleton*, *supra*, at pages 704-705:

"Finally, appellant contends that the judgment is excessive. Relief from allegedly excessive damages is available only when it appears that the damages awarded have been given under the influence of passion or prejudice (Code Civ. Proc., § 657, subd. 5). . . . In *Green* v. *Stewart*, 106 Cal.App. 518, 531-532 [289 P. 940], the court said:

" 'It is the province of the jury and then of the trial court upon motion for new trial, to determine and fix the amount of damages awarded a litigant. They have the witnesses before them and can weigh and consider all the circumstances of the case. All presumptions are in favor of the correctness of the judgment, and under the circumstances of this case we cannot hold it excessive.'

"Also, in *Wilson* v. *Fitch*, 41 Cal. 363, 386, we find the following:

" 'The Court will not interfere in such cases unless the amount awarded is so grossly excessive as to shock the moral sense, and raise a reasonable presumption that the jury was under the influence of passion or prejudice. In this case, whilst the sum awarded appears to be much larger than the facts demanded, the amount cannot be said to be so grossly excessive as to be reasonably imputed only to passion or prejudice in the jury. In such cases there is no accurate standard by which to compute the injury, and the jury must, necessarily, be left to the exercise of a wide discretion; to be restricted by the Court only when the sum awarded is so large that the verdict shocks the moral sense, and raises a presumption that it must have proceeded from passion or prejudice.' "

 The evidence justifies the aggregate award of $17,000 compensatory damages to the Lerners, particularly in the light of the uncontradicted evidence that the Lerners were out of pocket some $5,972.57 incurred in the defense of the prior litigation. Also, the verdict was in favor of two persons, not one, so that if divided equally the amount would be about $5,500 each. It must be remembered that the prior litigation consumed some three years from the time the original action was filed on June 15, 1954, until October 7, 1957, when the decision of the District Court of Appeal became final. (*Glickfeld* v. *Lerner,* 153 Cal.App.2d 158 [313 P.2d 924].)

What is said above is also applicable to the award of compensatory damages of $8,000 to the MacLeods.

 Appellants' last contention is directed to the purported misconduct of Mr. Fendler, attorney for the Lerners. The charge of misconduct arises out of the cross-examination of appellant Glickfeld concerning inconsistent statements in the various pleadings filed. As has been previously indicated, appellants filed an original and six amended complaints in the prior action. As each successive amended complaint was filed, additional claims for damage were made. Appellant Glickfeld was questioned at length about the additional claims which he had made in each successive amended complaint, *none of which* had been stated as "alternative claims." The record discloses that appellant had every opportunity to state his position, and he did state his position, often at great length.

 It is, of course, established that where a party has testified in an action, a superseded pleading may be used for purposes of impeachment. (*Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 385 [267 P.2d 257] ; *Wright* v. *Rogers,* 172 Cal.App.2d 349, 361 [342 P.2d 447].) The granting or denial of a new trial on the ground of misconduct is largely in the discretion of the trial court. (*Winchell* v. *Lorenzen,* 123 Cal.App.2d 704, 711 [267 P.2d 398] ; *Augustus* v. *Shaffer,* 171 Cal.App.2d 160, 167 [340 P.2d 37] ; *Sepulveda* v. *Ishimaru,* 149 Cal.App.2d 543, 547 [308 P.2d 809] ; *Levens* v. *Stocco,* 5 Cal.App.2d 693, 695 [43 P.2d 357] ; *Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, 814 [117 P.2d 841].)

For the reasons stated, the judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 15, 1961.